Filed 3/18/14  P. v. Medina CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B244849 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA382638) |
| v. | |
| EMMANUEL MEDINA et al., | |
| Defendants and Appellants. | |

APPEAL from the judgments of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed as modified.

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant Emmanuel Medina.

Kimberly Howland Meyer, under appointment by the Court of Appeal, for Defendant and Appellant Harry Isaac Rivas.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

_____

Appellants and defendants Harry Isaac Rivas and Emmanuel Medina were found guilty in count 1 of carjacking in violation of Penal Code section 215.[1]  A gang allegation (§186.22, subd. (b)(4)) and an allegation that a principal personally used a firearm (§ 12022.53, subds. (b), (e)(1)) were found true as to both defendants with respect to count 1.  An additional allegation of personal use of a firearm (§12022.53, subd. (b)) was found true as to Rivas and not true as to Medina.

In a separate case, Rivas was charged kidnapping to commit robbery (§ 209, subd. (b)(1)) and first degree robbery (§ 211).  Over Medina's objection, the cases were consolidated and additional charges were deemed counts 2 and 3.  The jury convicted him of these two charges.

Medina's motion for new trial was denied.  He was sentenced on count 1 to a term of 15 years to life in state prison based on the gang enhancement.

Rivas was sentenced on count 1 based on the gang enhancement to 25 years to life.  An additional 10-year enhancement for personal use of a firearm was imposed and stayed pursuant to section 654.  On count 2, a consecutive sentence of seven years to life was imposed.  A midterm of six years was imposed on count 3 but was stayed pursuant to section 654.

Rivas contends there is insufficient evidence to support the gang and personal use of a firearm enhancements, and that he is entitled to additional custody credit.  Medina contends the trial court committed prejudicial error by consolidating their cases and refusing to bifurcate the gang allegations.  Medina further argues there is insufficient evidence supporting his conviction, the theory that he acted as an aider and abettor, and the gang enhancement.  He also contends he received ineffective assistance of counsel for failure to object to prosecutorial misconduct and joins in Rivas's contention with respect to custody credit.

The Attorney General disputes the substantive contentions but agrees defendants are entitled to additional custody credit.  The Attorney General further requests the

---

[1]  All further statutory references are to the Penal Code unless otherwise noted.

abstract of judgment be corrected to reflect that Rivas was convicted of first degree robbery in count 3.

We order the abstract of judgment be modified to reflect the additional presentence custody credit and the conviction of first degree robbery in count 3. In all other respects the judgment is affirmed.

## FACTS

### I. *Prosecution Evidence*

#### A. Counts 2 and 3 (Kidnapping To Commit Another Crime and First Degree Robbery)

In the early morning hours of March 20, 2011, taxi driver Rodrigo Zambrano received a call from his dispatcher directing him to pick up a passenger. When he arrived at the location, Zambrano picked up a male whom he believed had requested taxi service. The man got into the backseat of the taxi, put a chrome semiautomatic gun to the back of Zambrano's head, announced it was a hold-up, and ordered Zambrano not to turn around. Zambrano briefly saw the man's face before he turned away. A minute later, a second male got into the front passenger side of the taxi.

Zambrano saw the second individual's face. While Zambrano drove the taxi, the second individual checked Zambrano's pockets and the glove compartment. Zambrano's cell phone, $60 in cash, and the taxi's stereo face plate were taken.

Approximately 10 minutes later, Zambrano was told to stop the car in an alley. Both suspects exited the taxi. They told Zambrano he would be shot if he did not leave quickly. Zambrano drove out of the alley and contacted his dispatcher. He reported the incident to police and described the suspects.

3

## B. Count 1 (Carjacking)

In the early morning of March 29, 2011, Emiliano Hernandez was driving his truck from work with coworker Eddy Vasquez. When the truck stopped at a traffic light, two males approached the vehicle. One of them stayed in front of the truck, while the other walked over to the driver's side. Both suspects brandished guns. Vasquez and Hernandez were ordered out of the vehicle at gun point. The suspects got into the vehicle and picked up two other individuals at a nearby bus stop and drove away. One of the two individuals was carrying some type of bag. Vasquez reported the crime to the police and described the suspects.

## C. The Investigation

At approximately 6:40 a.m. on March 29, 2011, Los Angeles Police Department Officer Jose Castaneda and his partner responded to a residence and discovered defendants and Robert Lopez sleeping under a blanket on the front porch.[2]

The officers detained the three males and recovered a .32-caliber stainless steel gun and a backpack from the porch. The backpack was within arm's reach of all three men. It contained five cell phones, including the red Motorola "slide" stolen from Hernandez in the carjacking. The backpack also contained a Blackberry Curve with Rivas's phone number—(213) 984-7930—and an MP3 player. Rivas's Blackberry showed outgoing and missed calls at 12:51 and 12:54 a.m., respectively, to and from the taxi company that dispatched Zambrano, the victim of the kidnapping and robbery. The caller requesting taxi service on March 20, 2011, had given Rivas's number to the taxi company.

---

[2] Lopez is Rivas's cousin. He was originally charged in the carjacking, but the charge against him was dismissed following the preliminary hearing.

Vasquez identified all three men in a field show-up at the residence. He identified Rivas as the gunman who went to the passenger side of the truck; Medina as the gunman who went to the driver's side; and Lopez as one of the individuals who had been picked up at the bus stop after the carjacking.

Also on March 29, Zambrano identified Rivas from a six-pack photographic array as the person who had robbed him of his money, cell phone, and stereo face plate. Officers conducted searches of both defendants' residences. They recovered a letter addressed to Rivas inside a backpack on top of his bed and a .32-caliber live round from Medina's living room.

## D. Trial Court Identifications

Zambrano could not identify Rivas at the preliminary hearing. At trial, he identified Rivas as the person who had robbed him and as the same person he identified in the six-pack.

At the preliminary hearing, Vasquez identified Rivas and Lopez as the carjackers and Medina as one of the individuals who had been picked up at the bus stop. At trial, Vasquez identified defendants as the carjackers.

## E. Expert Testimony

Hernandez's truck was recovered on March 29, 2011, approximately two blocks away from the residence where defendants were arrested. On March 30, 2011, forensic print specialist Alejandro Vidaurri obtained fingerprints from seven areas on the truck. Forensic print specialist Jose Lainez determined that five of the fingerprints obtained from the truck matched Rivas.

Officer Jonathan Campbell testified as an expert on the Big Top Locos street gang (BTLS), a Hispanic gang in an area patrolled by his division. Among other things, he opined that Medina was a BTLS member, Rivas was at least an associate, and that, given

5

a hypothetical situation with facts identical to this case, the crime was committed for the benefit of a criminal street gang and with the specific intent to assist fellow gang members in the crime.

## II. *Defense Evidence*

The parties stipulated that if Officer Yunis Soto had been called as a witness, she would have testified that she responded to the scene of the March 29, 2011 incident and interviewed Vasquez. Vasquez was the only passenger in Hernandez's vehicle. They were stopped at a red light, when he saw one suspect standing in front of the vehicle and the other next to the driver's side of the vehicle. One of the suspects took a steel handgun from his front waistband and pointed it at Vasquez. The other suspect then motioned to Hernandez and Vasquez to exit the vehicle, which they did. The suspects entered the vehicle, picked up two additional males, and drove away. Vasquez immediately called the police.

## DISCUSSION

## I. *Consolidation of Counts*

The trial court consolidated the two separate counts against Rivas with count 1 against both defendants over Medina's opposition, based on (1) cross-admissibility of evidence with respect to the recovered cell phones; (2) proximity in time; (3) lack of substantial prejudice related to the nature of the offenses joined; and (4) the absence of a showing that one case was substantially weaker than the other prior to trial. Medina challenges the ruling as a violation of his constitutional rights to due process and a fair trial. We review the trial court's decision to consolidate the charges for abuse of discretion (*People v. Thomas* (2012) 53 Cal.4th 771, 798) and affirm.

6

Section 954 provides that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."  Consolidation of charges is favored.  (*People v. Smith* (2007) 40 Cal.4th 483, 510.)  Joinder of counts related to only one codefendant at a joint trial may be proper where there is a joint charge as to both defendants (*People v. Champion* (1995) 9 Cal.4th 879, 904-906), as authorized by section 1098.[3]

Here, the carjacking, kidnapping for robbery, and robbery offenses are of the same class of assaultive crimes and may be joined under section 954.  (See *People v. Walker* (1988) 47 Cal.3d 605, 622.)  However, even when the statutory requirements for joinder have been met, "the court 'in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . .'  (§ 954.)"  (*People v. Thomas*, *supra*, 53 Cal.4th at p. 798.)

"'In determining whether a trial court abused its discretion under section 954 in declining to sever properly joined charges, "we consider the record before the trial court when it made its ruling."'  [Citations.]  We consider first whether the evidence of the two sets of offenses would have been cross-admissible if the offenses had been separately tried.  [Citation.]  If the evidence would have been cross-admissible, then joinder of the charges was not prejudicial."  (*People v. Thomas*, *supra*, 53 Cal.4th at p. 798.)

Medina has failed to make a "'clear showing of prejudice.'  [Citation.]"  (*People v. Thomas*, *supra*, 53 Cal.4th at p. 798.)  On the date of the incident for which Medina was charged, defendants were discovered with a .32-caliber gun.  A backpack within arm's

_____

[3]  Section 1098 provides in pertinent part:  "When two or more defendants are jointly charged with any public offense . . . they must be tried jointly, unless the court orders separate trials. . . .  [W]here two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial."

reach of both defendants was found to contain the cell phone taken in the March 29 carjacking, along with a cell phone that had been used to call the taxi company that employed the victim of the March 20 robbery and kidnapping. Both incidents involved more than one perpetrator and the use of firearms. Because the gun and cell phone evidence was relevant to both offenses and cross-admissible, the trial court did not abuse its discretion in refusing to sever the cases.

Nor did the trial court's decision result in gross unfairness. (*People v. Soper* (2009) 45 Cal.4th 759, 783 [even where the trial court did not abuse its discretion at the time of its ruling, refusal to sever counts may deprive defendant of due process when gross unfairness results].) "Appellate courts have found '"no prejudicial effect from joinder when the evidence of each crime is simple and distinct. . . ."' [Citations.]" (*Id.* at p. 784.) That was the case here. The crimes and the evidence were straightforward. The jury was instructed on the elements of each offense. (CALJIC No. 9.46 [carjacking], CALJIC No. 9.54 [kidnapping to commit robbery]; CALJIC No. 9.40 [robbery].) It was instructed on the burden of proof for conviction (CALJIC Nos. 2.90 & 2.91) and advised that each count charged a distinct offense that must be decided separately (CALJIC No. 17.02). Finally, it was instructed that defendants' guilt must be decided separately (CALJIC No. 17.00). We therefore reject Medina's contention.

## II. *Bifurcation of Gang Allegation from the Substantive Offense*

Prior to trial, Medina moved to bifurcate the gang allegation from the carjacking count. The trial court acknowledged the record was not as strong as in other cases but denied the motion because the evidence showed that one gang member and one associate of the same gang committed the carjacking together near the gang's territory, and because an expert for the prosecution would opine that under identical hypothetical circumstances, the carjacking would have been gang-related. Medina challenges the trial court's ruling. We conclude the trial court did not abuse its discretion in refusing to

bifurcate the gang allegation under *People v. Hernandez* (2004) 33 Cal.4th 1040, 1048 and affirm.

Officer Campbell testified as an expert concerning BTLS. He specified the boundaries of the gang's territory and observed that it was surrounded on all sides by rival gangs. The residence where defendants were arrested on March 29, 2011, was within BTLS territory. The crimes took place outside of BTLS turf. The gang's primary activities included firearm possession, murder, attempted murder, narcotic sales, and vandalism, but gang members also engaged in other criminal activities.

Officer Campbell opined that Medina was a BTLS member based on Medina's past admissions to police that he was a member and used the monikers "Mental" and "Funks," and the "BTLS" tattoo on Medina's hand. Rivas was at the least an associate of BTLS based on a letter recovered from his residence on March 29, 2011. The letter was written by Jacob Escamilla, a BTLS gang member in custody for a serious felony, who asked Rivas to tell Escamilla's codefendant to "keep his mouth closed," that they could "beat this case," and to "take his statement back from [police]." The letter referenced BTLS. As a rule, a gang member would not ask a non-gang member to perform such a significant act because of the level of trust required.

Officer Campbell was given the following hypothetical based on the facts of the carjacking in this case: Two individuals, an admitted and known member of BTLS and another who was at the very least an associate of the gang, approached a truck stopped at a traffic light armed with handguns. The gunmen forcibly removed the occupants of the truck, drove to a nearby bus stop where they picked up two individuals (one of whom was carrying a sports bag or a backpack), and left the scene. Later that day, the truck was found abandoned. The two gunmen and one of the individuals picked up at the bus stop were arrested about three hours later two blocks away from where the truck was found with a gun and backpack containing multiple cell phones and a MP3 player.

Officer Campbell believed the hypothetical crime was committed for the benefit of a criminal street gang. Committing the crime benefited the gang member and associate individually by improving their status within the gang. Gang members gained respect or

9

status within their gang by committing crimes, which showed their loyalty to the gang. Criminal activity established the gang as a violent entity, instilling fear in the community and in rival gangs. Individuals would want to join the gang if it had a violent reputation, and the gang would also be able commit crimes with impunity. An associate or non-gang member could gain gang membership by committing crimes, and taking small items like cell phones would benefit the gang because such items could be easily sold. The gang member and associate could have had simultaneous gang-related and personal motives in committing the carjacking. Gang members often commit crimes with other gang members or associates with predefined roles. The carjacking was not in BTLS territory, but taking the vehicle would have allowed the perpetrators to travel through rival gang territory more safely. The truck was recovered within BTLS territory, which indicates the perpetrators took it to return to their own turf. Gang members use firearms to intimidate and often employ them in committing different crimes by multiple members. In Officer Campbell's professional experience, .32-caliber guns are rare on the streets.

In general, evidence is admissible if its probative value is not substantially outweighed by the probability that it will unduly consume time, "create substantial danger of undue prejudice," confuse the issues, or mislead the jury. (Evid. Code, § 352.) Although courts recognize gang evidence may have a "'highly inflammatory'" impact (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167), "[it] is often relevant to, and admissible regarding, the charged offense[, and] . . . can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*People v. Hernandez*, *supra*, 33 Cal.4th at p. 1049.) Moreover, a "criminal street gang enhancement is attached to the charged offense and is, by definition, inextricably intertwined with that offense." (*Id*. at p. 1048.) Thus, "[t]o the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary." (*Id*. at pp. 1049-1050.)

In this case, the gang evidence was inextricably intertwined with the carjacking because the gang allegation was attached to it. Moreover, the gang evidence was relevant

10

to motive. An expert witness testified that gang members and associates would have multiple gang-related reasons to commit a carjacking under circumstances identical to those in this case: to gain gang membership (in the case of an associate), strengthen the individual's status within the gang, show their loyalty to the gang, recruit members with the display of violence, instill fear in the community making crimes easier to commit with impunity, instill fear in rival gangs to discourage attacks from rival gang members, benefit the gang monetarily by stealing items that could be readily sold, and travel from a rival gang area into their own area in relative safety.

Even if the trial court had erred in admitting the gang evidence, Medina was not prejudiced because the gang evidence presented was not highly inflammatory, as in cases like *People v. Albarran* (2007) 149 Cal.App.4th 214, where gang evidence that had no connection to the crime was admitted, including a deputy's lengthy testimony about the identity of other gang members and crimes they committed; threats the gang made against police, including threats to kill; and references to Mexican Mafia. Here, the expert's descriptions of predicate and signature crimes were not detailed, and the testimony given was relevant to the case. The expert opined primarily as to Medina's gang membership and BTLS culture. The jury was properly instructed as to the limited use of the gang evidence in rendering its verdict under CALJIC No. 17.24.3 and is presumed to have followed the limiting instruction. (*People v. Yeoman* (2003) 31 Cal.4th 93, 138-139.)

Further, the non-gang-related evidence of Medina's guilt was particularly strong. Medina was positively identified by Vasquez before and at trial. He was found two blocks away from where the truck had been abandoned, sleeping next to a .32-caliber gun and a backpack containing Hernandez's cell phone. A .32-caliber live round was found in Medina's bedroom. In light of the evidence, we cannot say Medina met his burden "'to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.' [Citation.]" (*People v. Hernandez*, *supra*, 33 Cal.4th at p. 1051.)

11

**III.** *Substantial Evidence Supporting the Conviction*

Medina contends the evidence is insufficient to support his conviction.  We disagree.

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.)  "'"[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.'" [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

We reject Medina's argument that the evidence was insufficient to establish his identity.  "Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime.  [Citation.]  Moreover, a testifying witness's out-of-court identification is probative for that purpose and can, by itself, be sufficient evidence of the defendant's guilt even if the witness does not confirm it in court.'  [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 480.)  Vasquez identified Medina as the perpetrator who went to the driver's side door in a field line-up and did so again at trial.  Additionally, Medina was found within two blocks of where the truck was abandoned, next to a gun and a backpack containing Hernandez's stolen cell phone.  Substantial evidence supports the jury's finding of guilt.  The fact that Vasquez identified Medina as the lookout at the preliminary hearing does not affect our conclusion.  It is the jury's province to weigh the evidence, and it did so here.  (See *People v. Snow*, *supra*, 30 Cal.4th at p. 66.)

We also reject Medina's argument that his conviction is based on insufficient evidence if the jury convicted him for his role as a lookout.  Although mere presence at a

12

crime scene does not suffice to establish aiding and abetting, acts tending to demonstrate aiding and abetting include "presence at the scene . . . , companionship, and conduct before and after the crime, including flight." (*People v. Haynes* (1998) 61 Cal.App.4th 1282, 1294.) A lookout need not signal a warning to be found culpable, because his presence facilitates the crime in other ways, serving as "encouragement to his companions and . . . a deterrent [to citizens who might interfere with the criminal activity]." (*People v. Moore* (1953) 120 Cal.App.2d 303, 306.) Here, evidence was presented that the men at the bus stop were close by and left the scene with the perpetrators. One of them carried a backpack consistent with the one found with defendants containing stolen property. The jury could reasonably infer that Medina acted as a lookout and deterrent, fled the scene with the carjackers, and provided the backpack to hide stolen goods. Substantial evidence supports his guilt.

## IV. *Substantial Evidence Supporting the Gang Enhancements*

Defendants' contention that the evidence is insufficient to support the gang enhancements also fails.

"'We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. . . .' [Citation.]" (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) A true finding on a gang enhancement requires proof the underlying crime was committed "for the benefit of, at the direction of, or in association with any criminal street gang" and "with the specific intent to promote, further, or assist in any criminal conduct by gang members[.]" (§ 186.22, subd. (b)(1); *People v. Albillar* (2010) 51 Cal.4th 47, 63, 65-66.) Both requirements were satisfied here.

With respect to the first prong, the prosecution presented substantial evidence that the crime benefited a street gang. Officer Campbell opined that Medina was a member of BTLS, and Rivas was at least an associate. Committing the crime would benefit a gang member or associate by elevating their status in the gang, displaying their loyalty to the gang, and helping to establish the gang as a violent entity, instilling fear in the

community and in rival gangs. An associate or non-gang member could gain membership by committing crimes. The gang would attract more members and have a greater ability to commit crimes without repercussions. Carjacking would allow gang members to move through rival territory more safely, and the taking of items like cell phones could provide a quick source of cash for the gang. Based on the circumstances, Officer Campbell opined that a hypothetical crime identical to this case would have been committed for the benefit of a criminal street gang. "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support [a] gang enhancement. [Citation.]" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.) In this case, circumstantial evidence also provided support for the gang finding. The perpetrators carjacked the truck outside of their territory, then drove back to BTLS turf. As Officer Campbell explained, BTLS territory is surrounded by rival gang territory, so the jury could reasonably infer that defendants drove the truck back to BTLS territory to ensure their safety while traveling through hostile areas.

As to the second prong, "'[t]here is no statutory requirement that this "criminal conduct by gang members" be distinct from the charged offense, or that the evidence establish specific crimes the defendant intended to assist his fellow gang members in committing.' [Citation.]" (*People v. Albillar*, *supra*, 51 Cal.4th at p. 66.) "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id*. at p. 68.) These requirements are also met. Medina was a gang member, Rivas was at least an associate, and gang members often commit crimes together or with associates with predefined roles, as defendants did here. Rivas does not contest his conviction was supported by substantial evidence, and, as we discussed at length, Medina's conviction was similarly supported. We conclude substantial evidence supports the gang enhancements.

14

**V.** *Substantial Evidence Supporting the Firearm Use Enhancement*

Rivas contests the jury's finding that he used a firearm in the commission of the carjacking, as lacking sufficient evidence and as inconsistent with its "not true" finding as to Medina. His contention lacks merit.

"'"'Whether a defendant used a firearm in the commission of an enumerated offense is for the trier of fact to decide. [Citation.] We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. [Citation.] Thus, we presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." [Citation.]' [Citation.]" (*People v. Bryant* (2011) 191 Cal.App.4th 1457, 1472.)

"'"'[W]hen a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure." [Citations.]' [Citation.]" (*People v. Bryant*, *supra*, 191 Cal.App.4th at p. 1472.)

In this case, Vasquez consistently identified Rivas as one of the gunmen in the field identification, at the preliminary hearing, and at trial. A gun was found next to Rivas when he was apprehended. There is no evidence that Rivas pointed the gun at Vasquez for any reason other than to intimidate him to leave the truck so that he could take it.

With respect to Medina, the jury's "not true" finding could have been based on Vasquez's identification of him at the preliminary hearing and the recovery of only one gun. The inconsistency in Vasquez's testimony with respect to Medina's role in the carjacking may have created reasonable doubt in the minds of the jury as to his personal gun use. Rivas's gun use enhancement was supported by substantial evidence.

Rivas also contends the gun enhancement must be stricken because section 12022.53, subdivision (e)(1) may only be imposed if the jury finds true the gang allegation enhancement (§ 186.22, subd. (b)) and that a principal personally used a

15

firearm.  Because there is substantial evidence to support the gang enhancement as we discussed above, this contention necessarily fails.

## VI. *Ineffective Assistance of Counsel/Prosecutorial Misconduct*

Medina contends prosecutorial misconduct arose from the prosecutor's display of a Field Interview Card (FI card) referencing his prior weapons offense and probation. Generally, a defendant may not complain of prosecutorial misconduct on appeal unless counsel timely objected or requested an admonition.  (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)  Medina argues that if the issue was forfeited, his trial counsel was constitutionally ineffective for failing to timely object.

Prior to trial, the parties agreed Medina's probationary status would not be mentioned during trial.  Outside of the jury's presence, Officer Campbell testified that Medina's prior conviction for firearm possession contributed to his opinion that Medina was a gang member because it was consistent with BTLS's possession and use of guns, but stated that Medina's BTLS gang tattoo and admission to gang membership were sufficient to establish he was a gang member.  Medina's counsel moved to exclude reference of Medina's prior gun possession conviction, which the trial court granted, on the basis that the evidence was more prejudicial than probative.  Officer Campbell was admonished not to mention the prior conviction, which the court stated would cause a mistrial.

Officer Campbell testified before the jury that the FI card completed during a prior arrest documented Medina's admission to membership in BTLS and his gang monikers. The prosecutor then displayed the FI card on a screen for the jury.  Officer Campbell identified the FI card.  Medina's counsel asked for a sidebar and informed the trial court that a handgun was mentioned on the FI card.  The prosecutor noted that he removed the card from the screen as soon as he noticed the reference.  The court responded, "I don't think the jury was capable of necessarily picking it up, but I am going to not bring attention to the fact, and we will just redact [People's Exhibit 20] and leave it off."

16

Outside the presence of the jury, the trial court stated on the record: "[T]he FI card that was shown indicated something about a gun; however, it was shown on a screen. [¶] And while I think there is a possibility a juror could have read it, I think it would have been very difficult. [¶] The level of print, it was difficult for me to see it from where I am sitting. [¶] The jurors are sitting 10 or 15 feet from me. Nevertheless, it did occur, and I don't think it was of such a nature as to cause a problem, but I am indicating on the record what occurred." The court noted that after defense counsel alerted the court to the gun reference, the prosecutor removed the exhibit from the screen. Prior to admission of the FI card, the prosecutor represented it had been redacted to exclude the reference to the gun possession conviction.

"To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-694; *Williams v. Taylor* (2000) 529 U.S. 362, 391-394; *People v. Kraft* (2000) 23 Cal.4th 978, 1068.) "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' (*Strickland v. Washington*, *supra*, . . . at p. 694; *People v. Riel* (2000) 22 Cal.4th 1153, 1175.)" (*People v. Cunningham*, *supra*, at p. 1003.)

"The Sixth Amendment guarantees competent representation by counsel for criminal defendants[, and reviewing courts] presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making significant trial decisions." (*People v. Holt* (1997) 15 Cal.4th 619, 703, citing *Strickland v. Washington*, *supra*, 466 U.S. at p. 690; *People v. Freeman* (1994) 8 Cal.4th 450, 513.) "A defendant who raises the issue on appeal must establish deficient performance based upon the four corners of the record. 'If the record on appeal fails to show why counsel acted or failed

to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.' [Citations.]" (*People v. Cunningham*, *supra*, 25 Cal.4th at p. 1003, citing *People v. Kraft*, *supra*, 23 Cal.4th at pp. 1068-1069; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) The decision to object to the admission of evidence is tactical in nature, and a failure to object will seldom establish ineffective assistance. (*People v. Williams* (1997) 16 Cal.4th 153, 215.) Given the presumption of reasonableness proper to direct appellate review, our Supreme Court has "repeatedly emphasized that a claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding. [Citations.] The defendant must show that counsel's action or inaction was not a reasonable tactical choice, and in most cases "'the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged . . . .'"' [Citations.]" (*People v. Michaels* (2002) 28 Cal.4th 486, 526.)

Here, there is nothing in the four corners of the record to indicate defense counsel's motivation for his tactical decisions, which is reason enough to reject the issue on direct appeal. It would have been reasonable for defense counsel to opt not to object because the likelihood that the jury noticed the gun possession reference was small and objecting may have drawn more attention to the prior conviction. (See *People v. Ghent* (1987) 43 Cal.3d 739, 772-773 ["Counsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the [inadmissible evidence]."].) But even if we were to conclude that no satisfactory explanations exist for counsel's decisions, any error was harmless.

It is not reasonably probable that the outcome would have been more favorable to Medina if his trial counsel had objected. Given the strength of the evidence against Medina, we cannot say he was prejudiced by his counsel's performance.

18

**VII.** *Evidence Supporting Prosecution's Alternate Theory of Guilt*

Medina's contention that he was prejudiced by the trial court allowing the prosecutor to argue a theory of guilt unsupported by the evidence is also without merit, as is his argument the prosecution exceeded the limits of the court's ruling in its closing argument.

At trial, Officer Campbell was given a hypothetical that the perpetrators of a carjacking drove to a nearby bus stop and picked up two individuals, one of whom was carrying a backpack, before leaving the area. Officer Campbell testified that gang members often planned to commit crimes with predefined roles: "One may hold a gun, one may act as a lookout, and in this case there were two that deployed a gun and a potential person looking out." Medina's counsel objected that there was no evidence supporting the expert's opinion. The objection was overruled, but the trial court admonished the jury that Officer Campbell's testimony was an opinion, and that it was the jury's duty to determine the facts of the case.

When the prosecution's alternate theory that Medina was a lookout was initially discussed, the trial court forbade the prosecutor from arguing the theory because of a lack of evidentiary support. The court reconsidered its ruling the next day, stating: "Well, I thought about that. And, you know, I guess it's in the range of the evidence that he's standing on the bus corner and—I don't know how you're going to argue it. But I suppose you could say he's on the bus corner and he could have been the lookout."

In closing argument, the prosecutor asserted Medina was guilty of personally using a gun in the commission of the carjacking based on Vasquez's identification of him as one of the gunmen, recovery of the .32-caliber gun, possession of Hernandez's cell phone when Medina was arrested, and recovery of a live .32-caliber round from Medina's residence.

Defense counsel argued Vasquez's preliminary hearing testimony indicated that Medina was not a gunman but one of the two individuals at the bus stop who were picked

19

up after the carjacking was complete.  He argued Medina's presence at the bus stop did not constitute aiding and abetting.

The prosecutor then argued that Vasquez's field show-up identification of defendants as the gunmen should be credited, because it was the most reliable. Alternately, if the jury believed Medina was at the bus stop during the carjacking, he would still be liable as an aider and abettor as the lookout.  Defense counsel's objection that the argument was not based on facts in evidence was overruled.  The prosecutor highlighted that gang members commonly commit crimes together with different members fulfilling different roles.  He urged that it was not reasonable to believe the men at the bus stop were unconnected to the carjacking.  The crime was committed at 3:00 a.m. when the area was deserted, and one of them carried a backpack, that was later discovered to contain Hernandez's stolen cell phone.

As we discussed above, substantial evidence supports Medina's conviction, whether based on a his direct participation in the crime or on an aiding and abetting theory.  Medina's argument that the prosecutor exceeded the scope of the trial court's order by arguing that he *was* a lookout rather than that he *might have been* a lookout also fails.  The prosecution may argue its version of events based on the facts in evidence, as it did here.  (*People v. Huggins* (2006) 38 Cal.4th 175, 207 ["It is not . . . misconduct to ask the jury to believe the prosecution's version of events as drawn from the evidence."] We conclude that it was not error to allow the prosecution to argue Medina was a lookout.

## VIII.  *Abstracts of Judgment*

### A.  Custody Credit

Defendants assert, and the Attorney General concedes, the trial court erred in its calculation of custody credits.  We agree.  At sentencing, the court awarded defendants credit of 573 days for actual custody and 86 days of conduct credit, for a total of 659

days.  Defendants were arrested on March 29, 2011, and sentenced on October 24, 2012, which amounts to 576 actual days of presentence custody credit.  (See *People v. Morgain* (2009) 177 Cal.App.4th 454, 469 ["defendant is entitled to credit for the date of his arrest and the date of sentencing"].)  Defendants also accrued 15 percent of the actual days, or 86 days, as conduct credit under section 2933.1, for a total of 662 days presentence custody credit.  We therefore order the abstracts of judgment be modified to reflect a total of 662 days of presentence credit, including 576 days in actual custody and 86 days of conduct credit.

## B.  First Degree Robbery Conviction

The verdict form and oral pronouncement of the verdict in count 3 reflect that the jury found Rivas guilty of first degree robbery.  The abstract of judgment incorrectly shows a conviction for second degree robbery and must be corrected to conform to the verdict.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The trial court is directed to prepare amended abstracts of judgment to properly reflect (1)  a total of 662 days of presentence credit, including 576 days in actual custody and 86 days of conduct credit as to each defendant, and (2)  the jury's verdict and the trial court's oral pronouncement that Rivas was found guilty of first degree robbery in count 3.  The trial court shall forward a certified copy of the amended abstracts of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgments are affirmed.

21

KRIEGLER, J.

We concur:

TURNER, P. J.

O'NEILL, J.*

---

*       Judge of the Ventura County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.