Filed 6/22/15  P. v. Venegas CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RICKY VENEGAS,<br><br>    Defendant and Appellant. | G049569<br><br>(Super. Ct. No. 11HF2643)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Reversed and remanded with directions.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Ricky Venegas of forcible rape (Pen. Code, § 261, subd. (a)(2)). The court found defendant had two "strike" priors under the "Three Strikes" law (Pen. Code, §§ 667, subds. (a)(1), (d), (e)(2), 1170.12, subds. (b), (c)(2)), and sentenced him to a term of thirty five years to life in state prison.

Defendant challenges the denial of his motion for a new trial based on jury misconduct. While the jury was deliberating, at least two of the jurors discussed the fact that defendant had not testified at trial. Defendant contends the court correctly found jury misconduct occurred, but mistakenly concluded he was not prejudiced as a result. We agree. Thus, we reverse and remand with instructions to grant the motion for a new trial.

## FACTS AND PROCEDRUAL HISTORY

Defendant admitted to the police he had intercourse with the victim but said it was consensual. Three days after the jury reached its verdict Juror No. 2 contacted defense counsel and said he would like to talk about the case. In response, defense counsel and Juror No. 2 met, in the presence of a defense investigator, who later prepared a written report summarizing the discussion.

According to the relevant portions of the defense investigator's report, Juror No. 2 told defense counsel:

"[M]any of the Jurors questioned and discussed why [defendant] did not testify and that factored into their deliberations. He felt [defendant's] testimony was important since the case was a 'he said, she said' situation. [Juror No. 2] and the other jurors felt they only heard the [victim's] side of the story and had to base [defendant's] side by what was written in the police report."

"Overall, [Juror No. 2] felt the big factor for him and the other jurors was that they would have liked to have seen what [defendant] had to say. The Jurors wanted to see [defendant] testify from the [witness] stand and discussed the fact that he did not. They concluded without his testimony they had to vote guilty."

2

On August 6, 2013, defendant filed a motion for a new trial, based in part on alleged jury misconduct in discussing defendant's failure to testify. The prosecutor filed written opposition which stated in relevant part: "No Declaration from [Juror No. 2] has been received. The most this court can do . . . is to obtain all materials relevant to the [defense] contacts with this juror and set a hearing date to have this juror testify under oath regarding relevant portions of deliberations."

On August 16, the court held a hearing and denied the motion for a new trial on all grounds except jury misconduct. On that issue the court indicated the record was incomplete because there was no sworn affidavit from Juror No. 2. The prosecutor suggested the court hold a hearing to question Juror No. 2 about the alleged misconduct, rather than having him submit an affidavit. The court agreed to contact Juror No. 2, set a hearing date, and question him under oath with both counsel present.

On October 11, the court held a hearing to question Juror No. 2 regarding his statements to defense counsel.

Before Juror No. 2 was brought into the courtroom, the prosecutor requested the court read him CALCRIM No. 355 concerning defendant's right not to testify.[1] Defense counsel strenuously objected and argued in part: "I think to bring [him] in and read him the jury instruction before questioning him is going to have the effect of silencing him. [¶] . . . [¶] To bring him in now, read him the jury instruction and say, having just read to you this jury instruction, is it your testimony that you did not follow this instruction, is basically leading him to an answer of course I followed the instruction . . . ." The court overruled these objections.

---

[1] CALCRIM No. 355 provides: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way."

The court then brought Juror No. 2 into the courtroom and assured him he was "not in trouble or anything like that." Next Juror No. 2 was escorted into chambers and given an opportunity to review the defense investigator's report. Still in the courtroom, the court announced it had decided not to place Juror No. 2 under oath before questioning him, and both parties acquiesced.

In chambers the court read Juror No. 2 CALCRIM No. 355 as requested by the prosecutor, and asked "Okay? And you recall that I instructed the jury on that during the trial?" Juror No. 2 responded, "Yes, I do."

Next, the court read Juror No. 2 the portions of the defense investigator's report described above questioning why defendant had not testified, including: the comments that the case was a "he said, she said" situation; that "the big factor for him" and the other jurors was they would have liked to have seen what defendant had to say; and that they "concluded without his testimony they had to vote guilty."

The court then asked Juror No. 2, "So my first question to you is that accurate? The statement that was made here when you told the investigator that you discussed why [defendant] did not testify? Was that discussed during jury deliberations?" Juror No. 2 responded, "Yes."

After that, the court said: "Okay. Was that discussed by you or by other jurors, or can you elaborate on that? I don't want to go into the other jurors' thought processes. I just want to know if those statements were made and what the reactions to that statement [*sic*] was. So who do you recall making that statement or bringing that up?" Juror No. 2 replied, "You're putting me on the spot."

When the court assured Juror No. 2 he was not on the spot, Juror No. 2 said, "It was brought up of why didn't the defendant . . . testify[?]" The juror stated: "I'm trying to remember. It wasn't discussed in length or anything like that" but "it was brought up." "And a few of us that were sitting here on the back side wanted to see or wanted to hear him testify."

4

The court next asked if it was brought up "in the jury deliberation process," and Juror No. 2 answered, "Not in the process as far as what we wrote on the board. You know, it was like if he would have been on the stand, could we have said something." The court continued, "So somebody said why didn't he testify, something?" and Juror No. 2 responded, "Yes."

When asked who brought it up, Juror No. 2 said it might have been either Juror No. 1 (the foreperson) or Juror No. 7, and that Juror No. 9 "agreed . . . we would have liked to have seen him on the stand."

Juror No. 2 told the court he could not recall whether the foreperson or any other member of the jury said they had been instructed not to "go into that area." Juror No. 2 also thought everybody on the jury heard the comments about defendant not testifying, and said he could tell other jurors agreed, because there were "a few nods of the head like, yeah, we would have liked to, you know."

Finally, the court returned to Juror No. 2's statement that defendant's failure to testify was a "big factor" for him and the other jurors. The court asked, "Was that actually said by you in the jury deliberation process, or was that just your opinion after the trial that you would have liked to heard [*sic*]?" The juror responded, "That was my opinion afterwards."

After the hearing in which Juror No. 2 was questioned, the court determined there were grounds to believe juror misconduct had occurred during deliberations. Further, the court decided to interview the other jurors "to determine if the jury engaged in misconduct that [was] prejudicial to the defendant."

On December 6, the court questioned Jurors No. 3, 4, 5, 8, 10, and 12 using essentially the same procedure used before. All but Juror No. 8 were first reminded of CALCRIM No. 355, either by reading the instruction or summarizing it or both. All were then asked if there was any discussion during jury deliberations about the fact that defendant did not testify. Again the jurors were not sworn.

Juror No. 3 said he remembered the instruction that a defendant has an absolute right not to testify. Asked if he had any recollection of anyone discussing the topic, Juror No. 3 said, "I do not recall anyone saying that, and I certainly don't recall us deliberating about that." Juror No. 3 also said he did not discuss the topic or let it affect his deliberations, and he did not recall hearing anyone say they would have liked to have heard defendant testify.

Juror No. 4 remembered being instructed in general, and remembered the specific instruction that the jury could not let the fact that defendant did not testify affect their deliberations. However, when the court asked whether the topic of defendant not testifying ever came up or was discussed, the juror replied, "To be honest, I don't remember that at all." The court also asked if Juror No. 4 or any of the other jurors had discussed that topic, and Juror No. 4 again responded, "As I said, I don't remember anything about that discussion."

Juror No. 5 also remembered the court had instructed the jury it could not consider the fact that defendant did not testify, but said that she did not recall the topic coming up at all. On further questioning about whether any of the other jurors might have brought up the subject of defendant not testifying, Juror No. 5 said, "I honestly don't recall anybody saying that."

Juror No. 8 was asked if there was "some type of discussion in the jury room concerning the fact that [defendant] did not testify." He answered: "Yes. Somebody said I would have liked to have heard him testify." The court asked if Juror No. 8 remembered who said that, and Juror No. 8 replied, "No. It was one of the women." The court then asked whether the foreperson said anything about the fact that they were not supposed to discuss that, and Juror No. 8 said: "The foreman said - - gosh." "I'm trying to think. He said something that went more like it doesn't matter or that's moot because it doesn't matter."

6

Later, after being reminded of CALCRIM No. 355, Juror No. 8 acknowledged the instruction but said he did not violate the instruction because hearing the comment did not affect his deliberations. The court asked if he remembered anyone nodding their head or making a similar sign of agreement with the comment about defendant not testifying, and Juror No. 8 reiterated the foreperson said it didn't matter, but he did not recall anyone agreeing with the comment.

Juror No. 10 too remembered the instruction that the jury could not consider defendant's failure to testify. When asked if the topic came up, she said, "I do not remember those words ever being said." The court again asked if anyone brought up the topic during deliberations, and Juror No. 10 said, "To the best of my recollection, that was never brought up."

Juror No. 12 similarly remembered being instructed not to consider the fact that defendant did not testify for any purpose. When asked if he remembered whether the subject came up during deliberations, Juror No. 12 responded, "I don't recall that." Asked if anyone said they wished they could have heard from defendant, Juror No. 12 said: "You know, it could have come up. I just don't recall. And I couldn't tell you if, you know - - I can't recall that it came up."

On December 13, the court questioned Jurors No. 1, 6, 7, and 9, again using essentially the same procedure. Juror No. 11 was not questioned because she was out of the country and unavailable.

Juror No. 1, the foreperson, remembered being instructed that the fact defendant did not testify could not affect the jury's deliberations in any way. When was asked if anyone brought the subject up, Juror No. 1 said, "I don't recall it being brought up specifically." He did recall, someone said defendant's statements to the police were the only evidence the jury had of "his version of things." He went on to say: "But that is the only memory I have of that even coming in to [*sic*] play tangentially in the deliberations." Still Juror No. 1 was confident the jury followed the court's instructions.

7

Juror No. 6 also remembered the instruction and, when asked if the subject ever came up, said, "I never heard that, no." Juror No. 6 did not remember if any of the jurors said they wished they could have heard defendant testify. The court asked if the foreperson had said anything about not discussing the fact that defendant did not testify and Juror No. 6 replied, "I think it was like reiterated that we couldn't discuss it, and that was it." He thought the foreperson made that comment "because he just wanted to make sure we weren't talking about what we weren't supposed to be."

Juror No. 7 recalled the instruction too. The court asked if anybody had brought up the topic in deliberations, and Juror No. 7 replied: "I don't - - I don't recall. I mean I honestly can say that I don't recall if somebody brought it up or didn't bring it up." "Unfortunately. I mean I do remember the instruction. I don't remember any - - I will say this. I don't remember it being an issue that if it had been brought up, that it wasn't discussed, that we are not to consider that in the deliberations. So I guess what I'm saying is if it was brought up, I think there was a resolution. It wasn't left hanging in the sense that I didn't feel that - - does that make sense?" When asked if the foreperson had said anything about the subject, Juror No. 7 said, "You know, I don't recall any specifics about that other than, again, I don't - - I wasn't left with the sense that it was left as an issue that was unresolved."

Juror No. 9 "absolutely" remembered the instruction. When asked if she or any of the other jurors had commented on defendant's failure to testify, or had wished they could have heard him testify, Juror No. 9 replied: "I don't think we discussed that. I mean to the best of my recollection. Maybe that was my personal opinion if he would have been there, but I don't think it was - - when we were there, it was - - I think if I recollect, I don't think anybody [talked about that]." The court asked if Juror No. 9 followed the jury instructions, and she replied, "Absolutely. Absolutely." When asked again if anyone specifically brought up defendant's failure to testify, she said, "I don't think so."

8

On January 17, 2014, after further oral argument, the court denied defendant's motion for a new trial. The court found jury misconduct occurred and focused on whether it was prejudicial. As the court explained, "I mean you have to agree that there was misconduct. Whether or not it rises to a level of prejudicial misconduct is my focus. Okay? Because when I have two jurors out of eleven telling me that they recall that topic coming up, then that's a violation of the court's instructions, and I think you have to agree that that constitutes misconduct."

The court specifically referenced the portion of the defense investigator's report in which Juror No. 2 stated "many of the jurors questioned and discussed why [defendant] did not testify and that factored in their deliberations." The court found, "That is just not supported by my inquiry of the other eleven jurors. In fact, only one other juror indicated that, Juror Number 8. And . . . Number 8 just recalled somebody saying I would have liked to have heard him."

The court went on to say, "The other interviews of the jurors do not support the initial allegations that the defense made concerning the interview of Juror Number 2. That's why I called in Juror Number 2." The court observed Juror No. 2 acknowledged the subject had come up, "[b]ut he also indicated that it was his opinion afterwards that he wished [defendant] would have testified. And that's far different than other jurors' [*sic*] discussing that in their deliberation process. . . ."

The court noted, "This is an important topic. And the majority of the jurors said absolutely not, I don't recall that being discussed at all." The court also found it significant that the topic of defendant not testifying "was never written down on the board. If it was ever mentioned, somebody said . . . they couldn't discuss it, it was moot, and the foreperson confirmed that as well."

The court concluded: "So I just don't see the evidence supporting that this jury based their verdict on anything inappropriate concerning [the] issue whether or not [defendant] did not testify. The evidence doesn't support it."

9

# DISCUSSION

Defendant contends the court correctly found at least two jurors committed misconduct by improperly discussing his failure to testify at trial, but mistakenly ruled the resulting presumption of prejudice had been rebutted. As a consequence, defendant contends the court erroneously denied his motion for a new trial. We agree.

"A defendant is 'entitled to be tried by 12, not 11, impartial and unprejudiced jurors. "Because a defendant charged with a crime has a right to the unanimous verdict of 12 impartial jurors [citation], it is settled that a conviction cannot stand if even a single juror has been improperly influenced." [Citations.]' [Citations.]" (*People v. Nesler* (1997) 16 Cal.4th 561, 578 (*Nesler*) (lead opn. of George, C. J.).)

In addition, the Fifth Amendment to the federal Constitution provides that no person "'shall be compelled in any criminal case to be a witness against himself.'" And "[t]he right not to testify would be vitiated if the jury could draw adverse inferences from a defendant's failure to testify. Thus, the Fifth Amendment entitles a criminal defendant, upon request, to an instruction that will 'minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify.' [Citation.]" (*People v. Leonard* (2007) 40 Cal.4th 1370, 1424-1425 (*Leonard*).)

It is jury misconduct to violate an instruction not to discuss a defendant's failure to testify. (*Leonard*, *supra*, 40 Cal.4th at p. 1425.) "This misconduct gives rise to a presumption of prejudice, which 'may be rebutted . . . by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm.' [Citations.]" (*Ibid*.)

We review the order denying defendant's motion for a new trial de novo, rather than under the deferential abuse of discretion standard, because his federal constitutional rights are implicated and because the questions presented concern the fundamental fairness of his trial. (*Nesler*, *supra*, 16 Cal.4th at p. 582, fn. 5 (lead opn.); see also *People v. Albarran* (2007) 149 Cal.App.4th 214, 224-225, fn. 7.)

"We accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination. [Citations.]" (*Nesler*, *supra*, 16 Cal.4th at p. 582, fn. omitted (lead opn.).)

Applying these principles, our task is to review the entire record to determine if the court's factual findings are supported by substantial evidence, and to independently determine whether there is a substantial likelihood defendant was prejudiced as a result. (*Nesler*, *supra*, 16 Cal.4th at pp. 582-583 (lead opn.).)

As a preliminary matter we observe that "the court does have a duty to conduct reasonable inquiry into allegations of juror misconduct or incapacity—always keeping in mind that *the decision whether* (*and how*) *to investigate rests within the sound discretion of the court*. [Citations.]" (*People v. Engelman* (2002) 28 Cal.4th 436, 442, italics added.) This observation is pertinent for three reasons.

First, although the court initially intended to question the jurors under oath, it ultimately decided to forgo that formality. That decision is problematic because, while the court certainly had "discretion to conduct an evidentiary hearing to determine the truth of the [misconduct] allegations" (*People v. Hedgcock* (1990) 51 Cal.3d 395, 415) based upon the unsworn defense investigator's report, it would ordinarily be error for the court to reach the merits of the jury misconduct issue based upon the unsworn statements given by the jurors (*People v. Bryant* (2011) 191 Cal.App.4th 1457, 1467-1469 (*Bryant*)).

The *Bryant* court held the trial court erred by reaching the merits of a motion for a new trial based upon competing but unsworn juror affidavits or declarations. (*Bryant*, *supra*, 191 Cal.App.4th at pp. 1470-1471.) Furthermore, the *Bryant* court concluded, "Because the parties waived any objection to the unsworn statements at the suggestion of the trial court, the appropriate remedy [was] to return the matter to the trial court for a full and complete hearing with competent evidence." (*Id*. at p. 1471)

11

This case is similar to *Bryant* insofar as the parties waived any objections to questioning the jurors unsworn at the suggestion of the court. But *Bryant* is also distinguishable because the jurors here were questioned by the court, in the presence of counsel, and counsel had the opportunity to participate in the questioning by suggesting questions to the court. Consequently, the parties validly waived any objections to questioning the jurors unsworn, and the court did not err by reaching the merits.

Second, as noted, despite strenuous objections by defense counsel, all but one of the jurors questioned were first reminded of CALCRIM No. 355, either by the court reading the instruction or summarizing it or both. Again the court certainly had discretion to proceed in this fashion. Even so, we share defense counsel's concern it may have had a chilling effect on the jurors. In essence, the court reminded the jurors what the law required and then asked them if they had violated the law.

There is no way to know for sure whether and to what extent this procedure actually discouraged jurors from being completely truthful. Still the reaction of Juror No. 2 provides insight. When questioned about the critical facts surrounding the discussion of defendant's failure to testify, Juror No. 2 expressed discomfort. He said, "You're putting me on the spot." And despite being reassured by the court that he was "not on the spot" and "there's no right or wrong answer," there was a perceptible shift in Juror No. 2's responses thereafter. As defendant suggests, it appears Juror No. 2 "then began backpedaling." One can't help but wonder if the other jurors professed lack of recollection was influenced by similar discomfort.

Similarly, it is curious that Juror No. 8, the only juror who was first questioned without reading or reminding him about CALCRIM No. 355, and Juror No. 8 is the only other juror who also admitted having a specific recollection of some type of discussion in the jury room concerning the fact that defendant did not testify. But after he was reminded of CALCRIM No. 355, Juror No. 8 said he did not violate the instruction because hearing the comment did not affect his deliberations.

12

Third, in questioning the jurors, the court was properly mindful of Evidence Code section 1150, subdivision (a) which provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, . . . likely to have influenced the verdict improperly. No evidence is admissible *to show the effect* of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Italics added.)

Evidence Code section 1150, subdivision (a), "thus makes a 'distinction between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved . . . .' [Citation.] 'This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent.' [Citations.]" (*People v. Cox* (1991) 53 Cal.3d 618, 694, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Yet, some of the courts questions here elicited statements which evidence the subjective reasoning processes of the jurors in violation of Evidence Code section 1150, subdivision (a). Most prominently, the court asked Juror No. 2 about the statements attributed to him in the defense investigator's report that defendant's failure to testify "factored into their deliberations" and "they concluded without his testimony, they had to vote guilty." Juror No. 2 confirmed those statements were accurate.

But the rule prohibiting a juror from impeaching his own verdict in this fashion embodies important policy considerations which render evidence of the juror's subjective reasoning processes "immaterial." (*People v. Hill* (1992) 3 Cal.App.4th 16, 27-33, disapproved on another ground in *Nesler*, *supra*, 16 Cal.4th at p. 587, fn. 5.) Therefore, we will limit our analysis to the evidence of the juror's improper '"overt acts"' and ignore the evidence of their '"subjective reasoning processes."' (*People v. Perez* (1992) 4 Cal.App.4th 893, 907.)

13

Having dispensed with those preliminary concerns, we now turn to the crux of the matter at hand. The court found, and the parties do not dispute that jury misconduct occurred. We agree. There is substantial evidence at least Juror No. 2 and Juror No. 8 discussed the fact that defendant did not testify, in direct violation of CALCRIM No. 355. There is no question those discussions constituted jury misconduct. (*Leonard*, *supra*, 40 Cal.4th at p. 1425.) In addition, there is substantial evidence that at least one more juror, an unidentified female, engaged in the same misconduct.

This misconduct gave rise to a presumption of prejudice, which may only be rebutted if our independent determination, based upon our examination of the entire record, reveals there is "no substantial likelihood" defendant suffered actual harm. (*Leonard*, *supra*, 40 Cal.4th at p. 1425.) Applying those standards here, we disagree with the court's conclusion the jury's misconduct did not prejudice defendant.

"As mentioned earlier, the purpose of the rule prohibiting jury discussion of a defendant's failure to testify is to prevent the jury from drawing adverse inferences against the defendant, in violation of the constitutional right not to incriminate oneself." (*Leonard*, *supra*, 40 Cal.4th at p. 1425.) Here, the discussion of defendant's failure to testify went beyond merely expressing "regret that defendant had not testified, because such testimony might have assisted the jurors in understanding him better." (*Ibid.*)

Moreover, to restate the observations of Juror No. 2, the fact that defendant did not testify was important because this case was a "he said, she said" situation. On the one hand, the jurors heard what the victim said through her live testimony on the witness stand in the courtroom. On the other hand, they only heard what defendant said "by what was written in the police report."

So in this case, the fact that in the jury room, during deliberations, at least two, probably three, and maybe more jurors discussed defendant's failure to testify in more than a passing manner, leads us to independently conclude there is a substantial likelihood that it influenced their decision in a way which actually harmed defendant.

14

To paraphrase *Nesler*, even if the improper discussion, "judged objectively, is [not] so prejudicial in and of itself that it is inherently and substantially likely to have influenced a juror; . . . from the nature of the misconduct and the surrounding circumstances, [we determine] that it is substantially likely" one or more jurors actually considered defendant's failure to testify during deliberations and held it against him. (*Nesler*, *supra*, 16 Cal.4th at pp. 578-579 (lead opn.).) Hence, "we must set aside the verdict, no matter how convinced we might be that an unbiased jury would have reached the same verdict, because a biased adjudicator is one of the few structural trial defects that compel reversal without application of a harmless error standard. [Citation.]" (*Ibid.*)

The Attorney General's arguments for a contrary result are unavailing. We have no quarrel with the Attorney General's basic observations: "'Transitory comments of wonderment and curiosity' about a defendant's failure to testify, although technically misconduct, 'are normally innocuous, particularly when a comment stands alone without any further discussion.' [Citations.] 'It is natural for jurors to wonder about a defendant's absence from the witness stand.' [Citation.]"

Where we part company with the Attorney General is the assertion, "Here, there is nothing to suggest that the jury drew any adverse inference against [defendant] because he did not testify." Likewise, we cannot abide the Attorney General's contention, based upon *People v. Loker* (2008) 44 Ca1.4th 691, 749 (*Loker*), that "defendant's failure to testify . . . was no[t] prejudic[ial] because the discussions were brief, the foreperson admonished the jury, and thereafter the subject was dropped."

The critical fact in *Loker*, was the Supreme Court's independent determination the juror "comments on this subject . . . *played no role in the jury's . . . deliberations*." (*Ibid.*, italics added.) Thus, the foreperson's prompt admonition was sufficient to forestall the possibility of inferences adverse to the defendant, "the purpose of the rule against commenting on defendant's failure to testify was served, and the presumption of prejudice [was] rebutted." (*Ibid.*)

15

None of the same can be said in the case at bar. Here, unlike in *Loker*, our independent determination has revealed a substantial likelihood that defendant's failure to testify actually played a role in the jury's deliberations. As a consequence, in this case the foreperson's admonition did not forestall the possibility of inferences adverse to defendant, the purpose of the rule against commenting on defendant's failure to testify was not served, and the presumption of prejudice was not rebutted.

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to vacate the challenged order and grant defendant's motion for a new trial.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.

16