[No. B219277. Second Dist., Div. Five. Jan. 24, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDIE BRYANT, Defendant and Appellant.

### Counsel

Robert M. Sweet and Ronnie Duberstein, under appointments by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

### Opinion

**KRIEGLER, J.**—A verdict may be overturned and a new trial granted for jury misconduct demonstrated by the sworn affidavit of a juror. In this case, both the defense and prosecution presented unsworn statements of jurors on the issue of jury misconduct, and at the urging of the trial court, the parties agreed to waive any objection to the unsworn statements in order to allow the court to reach the merits of the issue. In other words, defense counsel and the prosecutor agreed that 13 *unsworn* juror statements had been made under penalty of perjury. Based upon the unsworn juror statements, the court found misconduct occurred when a juror accessed the Internet by cellular phone for a definition of reasonable doubt and when the jury considered punishment. The court denied the motion for new trial, without holding an evidentiary hearing, ruling that the presumption of prejudice arising from jury misconduct was rebutted.

In light of the policy in favor of upholding the integrity of jury verdicts, and the complementary rule that jury misconduct may warrant a new trial when shown by sworn juror affidavits, we hold that a new trial may not be granted in the absence of sworn juror affidavits establishing misconduct. Because of the nature of the misconduct asserted in this case, we remand the matter to the trial court for a hearing on the issue of jury misconduct in accordance with settled law.

## PROCEDURAL HISTORY

Defendant and appellant Eddie Bryant was convicted by jury of second degree robbery (Pen. Code, § 211),[1] with a finding that he personally used a firearm in the commission of the offense (§ 12022.53, subd. (b)). The trial court sentenced defendant to state prison for the low term of two years for the robbery, enhanced by 10 years for the firearm use allegation.

Defendant argues the trial court committed prejudicial error in denying the motion for new trial, based on allegations of jury misconduct, without holding an evidentiary hearing involving inquiry of the jurors. Defendant also contends the evidence established he was merely armed with a firearm (§ 12022, subd. (a)(1)), but was insufficient to prove firearm use in the robbery. We remand the jury misconduct issue to the trial court for further proceedings and hold the evidence was sufficient to support the firearm use allegation.

## FACTS

Sheila Safadaran and Felicia Davis attended a college fraternity party at the Derby in Los Angeles on August 30, 2008. Both women noticed that defendant stood out among the crowd of well-dressed partygoers, due to his two long braids or pigtails that started at the front of his head and went toward the back, his white tank top, blue jeans, and sweater over his shoulder. Defendant appeared to be at the party with three other males, one of whom was a juvenile who also wore a tank top and blue jeans and had braided hair, but with only a single ponytail.

Safadaran and Davis walked to Safadaran's car as the party was winding down at approximately 1:45 a.m. Safadaran entered the car first. As Davis was standing by the trunk of the vehicle with her cell phone in her hand, defendant approached with a shiny gun in his right hand and said, "Give me your phone." Defendant stood one to two feet from Davis with the gun held down to his side; it was not pointed at Davis at any time. In fear, Davis

---

[1] All statutory references are to the Penal Code, unless otherwise indicated.

placed her phone, a Sidekick by T-Mobile, on the trunk of the car as demanded by defendant. Defendant ordered Davis to get in the car without looking back.

Safadaran saw defendant at the trunk of the car near Davis, with his hand in his pocket; she did not see a firearm. She could tell from Davis's voice that something was wrong. Davis entered the car and told Safadaran to leave and not look back because defendant had taken her phone. Safadaran heard defendant say, "Drive off. Don't look back."

Safadaran called 911 and was directed to drive to a nearby restaurant to safely meet officers. Safadaran also called a friend, Jon Faievre, who had been a crowd manager at the Derby and described the robber to him. Faievre saw defendant, who matched the description given by Safadaran, in front of the club. Faievre watched defendant and three others enter a white Camaro with one functioning headlight. Faievre followed in his own car as defendant drove the Camaro, staying in contact with Safadaran along the way.

Safadaran saw defendant driving the car matching the description given by Faievre. The police stopped the vehicle, and later Safadaran and Davis were driven to a location to view a field showup of four males, where both women made positive identifications of defendant. Davis's cell phone was recovered from the car, as was a loaded silver firearm from beneath the backseat.

*Defense*

Defendant, who had never committed a crime and denied commission of the robbery and possession of a gun, suggested in his testimony that Chris Prude, who was with defendant at the Derby, was the person who committed the robbery and placed the firearm under the rear seat of the Camaro. Defendant's friend and business associate, Devynn Brown, provided similar testimony and vouched for defendant as being friendly, loyal, and a good person. Another friend, John Montes, gave testimony along the same lines as Brown. The mother of defendant's girlfriend testified she paid for defendant's Sidekick cellular phone, she had never heard anyone say anything bad about defendant, and did not believe defendant would commit robbery.

## DISCUSSION

## I

## MOTION FOR NEW TRIAL BASED ON JURY MISCONDUCT

Defendant argues the trial court erred in denying his motion for new trial based on jury misconduct. He identifies two forms of jury misconduct—a

juror looking up the definition of reasonable doubt on a cell phone during deliberations and the jury's consideration of punishment in reaching a verdict. Defendant contends the presumption of prejudice that existed after the trial court's finding of misconduct was not rebutted, and there was a substantial likelihood of actual harm to the defense. Defendant further contends the trial court committed prejudicial error in denying the new trial motion without holding an evidentiary hearing. We remand for the purpose of holding a new hearing on the issue of jury misconduct.

## A. Background

Jury deliberations commenced on Thursday, March 26, 2009, at 9:00 a.m. That afternoon, the jury asked for further definition of reasonable doubt and how to interpret that standard, but the trial court explained to the jury that the court could not give further guidance beyond the instruction and the jury needed to work with that instruction. No verdict was reached that day. At 11:48 a.m. on March 27, the jury returned its verdict finding defendant guilty of second degree robbery and the firearm use allegation true. Probation and sentence hearing was set for April 14, 2009.

After several continuances, the trial court on June 2, 2009, granted a defense motion for release of juror identifying information for the purpose of investigating jury misconduct to support a motion for new trial. Continuances of the motion for new trial and sentencing were granted to allow further investigation on July 7, August 11, and September 2, 2009. The motion for new trial was filed on September 10, 2009.

## B. The Motion for New Trial

Defendant asserted three instances of misconduct were established in the one juror statement supporting his motion—improperly accessing the Internet for the definition of reasonable doubt over a cell phone, consideration of punishment in violation of the trial court's instruction, and improper pressure to reach a verdict due to a threat that the court would keep the jury deliberating two weeks if a verdict were not reached. The sole supporting document from a juror was entitled "DECLARATION OF [M.W.]" The document was signed and dated by the juror and witnessed by someone with an illegible signature. The "declaration" did not indicate the statement was made under the penalty of perjury, declare the facts to be true, or state where the document was executed.

Juror M.W. "declare[d]" that a vote was taken the first day of deliberations and was seven to five for guilty. She had "reasonable doubts" as to defendant's guilt, "but did not feel that he was entirely innocent." Five of the seven

jurors who voted guilty were "extremely argumentative" and deliberations became heated, causing her to feel uncomfortable. Jurors who spoke in favor of an "innocent verdict" were interrupted and argued with, and name calling took place. An unidentified juror "stated that if our client was found guilty, he would only get 3 to 5 years, and since he had no priors, would probably get probation."[2] When the jury continued to be "hung," a juror said if they did not reach a verdict, the judge would send them back for two additional weeks of deliberation. Juror M.W. was pressured into voting guilty in order to avoid two more weeks of deliberations. She felt others were pressured into voting guilty and just wanted to end deliberations. Jurors had been told not to check anything online by using a computer. One of the jurors, possibly Juror No. 5, went online during deliberations using his iPhone, looked up the definition of reasonable doubt, and "then shared his findings with the other jurors."

## C. *The Prosecution's Opposition to the Motion for New Trial*

The prosecution's written opposition to the motion for new trial relied on unsworn statements made by all 12 jurors to a district attorney investigator, whose reports were also unsworn. The juror statements produced by the prosecution only addressed the issue of a juror accessing the Internet for a definition of reasonable doubt, because the allegations concerning improper consideration of punishment and undue pressure to reach a verdict were not disclosed until defendant filed Juror M.W.'s "declaration" in support of the motion for new trial. The following is a summary of the juror statements offered by the prosecution.

Foreperson R.L. suspected one juror used a cell phone during deliberations to obtain a definition of reasonable doubt. The juror read one or two sentences before Foreperson R.L. told him to stop and told the jurors to use the court's definition. He does not think the statements had any bearing on the outcome of the case.

Juror M.W. said a juror used an iPhone to read a definition of reasonable doubt. She does not recall anyone stopping him. The definition did not add to her understanding of reasonable doubt. The jury asked the trial judge for additional instruction, but it was not given.

Juror Je.S. did not see anyone use a cell phone to access the Internet, but he thinks someone may have read a definition of reasonable doubt.

Juror Ju.S. did not see anyone use the Internet during deliberations. When the jury had a question about the meaning of reasonable doubt, he offered to

---

[2] The juror's use of the phrase, "our client," suggests the statement was not entirely written by the juror, as the juror had no client in the action.

look it up on the Internet, but another juror told him that was not allowed, so neither he nor any other juror looked up the definition.

Juror H.P. was looking at photographic evidence during deliberations when he heard a juror state a definition of reasonable doubt that sounded as if it came from a dictionary. The definition did not make any sense to Juror H.P. and appeared not to make sense to other jurors. One of the jurors later reread the court definition of reasonable doubt. The dictionary definition was not an issue during deliberations.

Juror F.R. said one juror appeared to read the definition of reasonable doubt from a cell phone. Juror F.R. commented that the trial judge had given a definition of reasonable doubt. Some jurors wanted further explanation, so they asked the judge. The juror's reasonable doubt definition was not mentioned again. Defendant was guilty and the definition read was inconsequential.

Juror F.K. was unaware of any juror using the Internet during deliberations, using a cell phone to check the Internet, or reading a definition of reasonable doubt. It might have happened, but she did not remember. The jury did ask the trial judge for further explanation of reasonable doubt.

Juror L.H. recalled one juror who accessed his cell phone during deliberations. She has no recollection of the juror stating a definition of reasonable doubt and the jurors only used the court's definition.

Juror A.W. recalled a juror reading a definition of reasonable doubt from a cell phone during deliberations. She believes the definition should not have been read and its effect on the jury was unknown.

Juror K.H. recalled the jurors discussing reasonable doubt during deliberations. He does not recall anyone using a cell phone to access the Internet or giving a definition of reasonable doubt during deliberations.

Juror C.W. heard a juror read a definition of reasonable doubt from his cell phone using Webster's Dictionary. Someone in the room told him to stop, but the juror kept reading.

Juror W.R. did not recall anyone using a cell phone to access the Internet or anyone citing a definition of reasonable doubt.

Based on these unsworn statements, the prosecutor argued there was no conclusive evidence that a juror accessed the Internet for a definition of reasonable doubt, but if a juror did read a definition of reasonable doubt, there was no evidence of its source. Only one juror indicated punishment was

considered, and the mere discussion of that subject does not rise to the level of misconduct. Finally, the prosecution contended that even if the trial court found misconduct, there was no prejudice.

## D. *The Hearing on the Motion for New Trial*

The trial court observed at the outset of the hearing that both parties submitted "evidence for the court to consider under Evidence Code section 1150"—defendant filed a "declaration" from Juror M.W. that was not signed under penalty of perjury, and the prosecution filed unsworn investigator's reports of interviews with all 12 jurors. Deeming the absence of sworn statements from jurors a "procedural defect," the court asked if counsel would "waive those defects" and allow the court to proceed on the documents submitted. "I think if counsel are comfortable proceeding on what I have, and you can both argue as to the weight of the documents, but if counsel are prepared to waive the fact they are not under penalty of perjury, then the court would consider them as if they were." Both parties agreed to the court's suggestion and waived any objection to the defects in the juror statements.

The trial court expressed the tentative view there were two instances of misconduct—a juror accessed the Internet for a definition of reasonable doubt and read it to the jury, and the jury's discussion of punishment as set forth in the defense version of Juror M.W.'s statement. Because the court believed there was misconduct, a presumption of prejudice arose which required the prosecution to show no "substantial likelihood that the complaining party suffered actual harm," or no "reasonable probability of actual harm to the complaining party."

Although there was misconduct, the trial court's tentative view was the presumption of prejudice was rebutted because Juror M.W. did not indicate the content of the Internet definition of reasonable doubt that the juror obtained and there was no showing the definition differed from the court's instruction, the jury asked the court for help in further defining reasonable doubt, and the jury was told to follow the court's instruction. As to the jury's improper consideration of punishment, Juror M.W. did not indicate a juror changed a vote after the discussion, the court believed three to five years in prison was significant custody time, and a discussion of punishment is not inherently likely to influence a verdict. Finally, whatever pressure flowed from the comment about a two-week deliberation was not sufficient to constitute misconduct. Incorporating its tentative opinion, the court found no substantial likelihood of prejudice based on the record and denied the motion for new trial.

### E.  *Jury Misconduct as a Basis for New Trial*

■  "When a party seeks a new trial based upon jury misconduct, a court must undertake a three-step inquiry. The court must first determine whether the affidavits supporting the motion are admissible. (See Evid. Code, § 1150, subd. (a).) If the evidence is admissible, the court must then consider whether the facts establish misconduct. (See *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 79–82 [137 Cal.Rptr. 863, 562 P.2d 1022].) Finally, assuming misconduct, the court must determine whether the misconduct was prejudicial. (See *People* v. *Marshall* (1990) 50 Cal.3d 907, 950–951 [269 Cal.Rptr. 269, 790 P.2d 676]; *People* v. *Miranda* (1987) 44 Cal.3d 57, 117 [241 Cal.Rptr. 594, 744 P.2d 1127].) A trial court has broad discretion in ruling on each of these questions and its rulings will not be disturbed absent a clear abuse of discretion. (See *People* v. *Montgomery* (1976) 61 Cal.App.3d 718, 728–729 [132 Cal.Rptr. 558].)" (*People v. Perez* (1992) 4 Cal.App.4th 893, 905–906 [6 Cal.Rptr.2d 141].)

### F.  *Admissibility of Unsworn Statements of Jurors*

■  As noted above, the first step in the analysis where jury misconduct is asserted is to determine whether the affidavits in support of the motion are admissible. Clearly what was submitted to the trial court in this case were 13 inadmissible juror statements, none of which could ·be the basis for a finding of jury misconduct. In 1969, our Supreme Court held that juror affidavits are admissible under Evidence Code section 1150[3] to establish jury misconduct that warrants the grant of a new trial. (*People v. Hutchinson* (1969) 71 Cal.2d 342, 350–351 [78 Cal.Rptr. 196, 455 P.2d 132] (*Hutchinson*).) "Admission of jurors' affidavits within the limits set by [Evidence Code] section 1150 protects the stability of verdicts, and allows proof by the best evidence of misconduct on the part of either jurors or third parties that should be exposed, misconduct upon which no verdict should be based. (See Pen. Code, § 1181; Code Civ. Proc., § 657.) The content and conduct of deliberations may already be exposed by jurors at the trial of one who attempted corruptly to influence the verdict, or, in the case of the present two exceptions to the rule, at motion for new trial. Admission of this best evidence of misconduct or improper influence at a motion for new trial, therefore, would not present a breach in the [postverdict] privacy of jury deliberations. It would merely

---

[3] Evidence Code section 1150 provides as follows: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined. [¶] (b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."

insure that evidence of misconduct will be available to the courts, freeing them to determine the substantive questions of whether the particular misconduct is a recognized ground for new trial and whether it has prejudiced the losing party. Admission of jurors' affidavits should also have a further prophylactic effect of stripping from all prejudicial misconduct whatever veil of [postverdict] secrecy is now reserved for the proper deliberations of the jury." (*Hutchinson, supra,* at p. 350.)

Relying on Evidence Code section 1150 and *Hutchinson,* California courts have consistently held that properly executed juror affidavits are required to establish jury misconduct of the type involved in this case. As explained in *People v. Dykes* (2009) 46 Cal.4th 731, 810–811 [95 Cal.Rptr.3d 78, 209 P.3d 1], "ordinarily a trial court does not abuse its discretion in declining to conduct an evidentiary hearing on the issue of juror misconduct when the evidence proffered in support constitutes hearsay. (*People v. Hayes* (1999) 21 Cal.4th 1211, 1256 [91 Cal.Rptr.2d 211, 989 P.2d 645] ['Normally, hearsay is not sufficient to trigger the court's duty to make further inquiries into a claim of juror misconduct.']; see also *People v. Avila* [(2006)] 38 Cal.4th [491,] 605 [43 Cal.Rptr.3d 1, 133 P.3d 1076]; *People v. Carter* [(2003)] 30 Cal.4th [1166,] 1217 [135 Cal.Rptr.2d 553, 70 P.3d 981].) Moreover, a trial court does not abuse its discretion in denying a motion for new trial based upon juror misconduct when the evidence in support constitutes unsworn hearsay. (*People v. Cox* [(1991)] 53 Cal.3d [618,] 697 [280 Cal.Rptr. 692, 809 P.2d 351] [the defense presented the unsworn statement of a juror and an affidavit by an investigator recounting the juror's statement to him, but the evidence was not competent, and this court's decision in *People v. Hedgecock* (1990) 51 Cal.3d 395 [272 Cal.Rptr. 803, 795 P.2d 1260] is not to the contrary]; *People v. Williams* (1988) 45 Cal.3d 1268, 1318[–1319] [248 Cal.Rptr. 834, 756 P.2d 221] ['The sole evidence of the alleged misconduct was the declaration of a defense investigator that purports to relate a conversation with [a] juror. It is settled, however, that "a jury verdict may not be impeached by hearsay affidavits." '].)"

As explained in *People v. Villagren* (1980) 106 Cal.App.3d 720, 729–730 [165 Cal.Rptr. 470], "Evidence Code section 1150 authorizes the use of jurors' affidavits to show objective facts which occurred in the jury room and could have improperly influenced the jury. ([*Hutchinson, supra,*] 71 Cal.2d [at pp.] 350–351 . . . .) However, a jury verdict may not be impeached by hearsay affidavits. (*People v. Spelio* (1970) 6 Cal.App.3d 685, 690 [86 Cal.Rptr. 113].)"

An unsworn letter from a jury foreperson was held to be insufficient to warrant a new trial in *People v. Von Villas* (1992) 10 Cal.App.4th 201, 251–253 [13 Cal.Rptr.2d 62]. "Upon seeking a new trial based on jury

misconduct, the moving party must present admissible evidence that misconduct occurred." (*Id.* at p. 251.) "The unsworn letter of foreperson Burke does not constitute 'otherwise admissible evidence' for purposes of showing jury misconduct pursuant to the provisions of Evidence Code section 1150, subdivision (a)." (*Id.* at pp. 252–253.)

Nor may the prosecution rely on an unsworn statement from a juror to refute affidavits properly submitted by the defendant in support of a motion for new trial based on jury misconduct. "No counter affidavit or declaration specifically directed to the declaration of juror Winters was filed by the prosecution. However, on April 16, 1975, 11 days before the statement from juror Winters, the prosecution procured a statement from juror Henry E. Nachtigal which was not sworn to as an affidavit or made under penalty of perjury and therefore does not qualify as an affidavit and could not be considered by the trial court in opposition to the motion." (*People v. Brown* (1976) 61 Cal.App.3d 476, 479 [132 Cal.Rptr. 217], fn. omitted.)

*People v. Perez, supra,* 4 Cal.App.4th 893 is particularly instructive and points the way to the correct disposition of this appeal. In *Perez,* defense counsel moved for funds to investigate jury misconduct as ground for a new trial because one juror told defense counsel the jury based its verdict on the defendant's failure to testify. No juror declarations were submitted. The trial court denied the request for funds and a new trial, incorrectly reasoning a juror may not impeach a verdict with evidence the jury did not follow the law. The trial court did not base its ruling on the absence of juror affidavits but, to the contrary, assumed all 12 jurors would say the discussion of the defendant's failure to testify did take place. (*Id.* at pp. 905–906.) The *Perez* court reversed because the facts assumed by the trial court to be true established misconduct, and remanded the case to the trial court for reconsideration of the motion for new trial. However, the *Perez* court cautioned that the hearing on remand should be conducted according to law, which requires juror affidavits to establish misconduct. "Our conclusion the court prejudicially erred in denying the new trial motion requires that we vacate the judgment and remand for further proceedings. On remand[,] we wish to emphasize the trial court should not assume 12 jurors actually discussed Perez's failure to testify. Although we appreciate a substantial period of time has expired since the jury in this case was discharged and obtaining declarations from some or all of the jurors may be difficult or impossible, we do not believe the court's earlier error relieving defense counsel of this burden should result in any other procedure than that required by law." (*Id.* at p. 909.)

## G. *Analysis*

■ It is undisputed in this case that neither side presented a juror declaration or affidavit as defined in Code of Civil Procedure section 2015.5.[4] "Under section 2015.5, a declaration has the same 'force and effect' as an affidavit." (*People v. Griffini* (1998) 65 Cal.App.4th 581, 594 [76 Cal.Rptr.2d 590].) "Critical here is section 2015.5, which defines a 'declaration' as a writing that is signed, dated, and certified as true under penalty of perjury. In addition, section 2015.5 specifies that a declaration must *either* reveal a 'place of execution' within California, *or* recite that it is made 'under the laws of the State of California.' " (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 606 [15 Cal.Rptr.3d 793, 93 P.3d 386].)

■ In support of defendant's motion for new trial, the "declaration" of Juror M.W. was not certified as true under penalty of perjury, nor did it show the place of execution of the document or that it was made under the laws of California. As to the prosecution's opposition, none of the 12 juror statements was made under penalty of perjury, none was signed, and each was an investigator's representation of what a juror had said. In short, there was no admissible evidence of jury misconduct presented to the trial court. While parties may, in general, waive evidentiary objections to documents, we hold it is not permissible to treat unsworn statements of 12 jurors as though they had been made under penalty of perjury in order to attack a jury verdict for misconduct.

---

[4] Code of Civil Procedure section 2015.5 provides as follows: "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California. The certification or declaration may be in substantially the following form:
"(a) If executed within this state:
" 'I certify (or declare) under penalty of perjury that the foregoing is true and correct':
"

| "(Date and Place) | (Signature) |
|---|---|

"(b) If executed at any place, within or without this state:
" 'I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct':
"

| "(Date) | (Signature)" |
|---|---|

■ As in *People v. Perez, supra,* 4 Cal.App.4th at page 909, it was error to reach the merits of the jury misconduct issue without the sworn affidavits required by law. Because the parties waived any objection to the unsworn statements at the suggestion of the trial court, the appropriate remedy is to return the matter to the trial court for a full and complete hearing with competent evidence.

■ The issues of misconduct asserted in this case are serious and if proven by sworn evidence, give rise to a presumption of prejudice. "It is true, as defendant argues, that appellate courts have long cautioned against 'an impromptu instruction on reasonable doubt.' [Citations.] This is not because the instruction cannot be improved today. As *Victor* v. *Nebraska* [(1994)] 511 U.S. [1] [127 L.Ed.2d 583, 114 S.Ct. 1239] attests, it certainly can. [Citations.] Rather, it is because varying from the standard is a 'perilous exercise.' [Citation.]" (*People v. Freeman* (1994) 8 Cal.4th 450, 503–504 [34 Cal.Rptr.2d 558, 882 P.2d 249].)

If it is perilous for the trial court to tinker with the definition of reasonable doubt, it is no less so for the jury to research and obtain another definition of reasonable doubt during deliberations, and a presumption of prejudice would arise under settled law. It is difficult to imagine how the presumption of prejudice could be rebutted in the absence of evidence as to what definition of reasonable doubt was accessed by the jury during deliberations.

The trial court instructed the jury to "reach your verdict without any consideration of punishment," a correct statement of law.[5] (*People v. Honeycutt* (1977) 20 Cal.3d 150, 157, fn. 4 [141 Cal.Rptr. 698, 570 P.2d 1050]; *People v. Hord* (1993) 15 Cal.App.4th 711, 725 [19 Cal.Rptr.2d 55] [characterizing consideration of punishment a forbidden topic constituting misconduct].) The court shall address the existence of misconduct and prejudice anew if it is established by competent evidence on remand that the jurors considered punishment despite the court's instruction to the contrary.

The cause is remanded to the trial court for consideration of the issue of jury misconduct in accordance with settled law. (*People v. Perez, supra,* 4 Cal.App.4th at pp. 908–909.)

---

[5] Defendant states in his opening brief that only the trial court's written instructions advised the jury not to consider punishment, but that statement was not included in the court's oral instructions. This is incorrect, as the trial court instructed the jury orally and in writing, "You must reach your verdict without any consideration of punishment."

## II

## SUFFICIENCY OF EVIDENCE OF GUN USE

Defendant argues the evidence was insufficient to support a finding he personally used a firearm in the commission of the robbery within the meaning of section 12022.53, subdivision (b). Instead, defendant contends the evidence merely establishes he was armed, as defined in section 12022, subdivision (a)(1). We disagree.

" 'Whether a defendant used a firearm in the commission of an enumerated offense is for the trier of fact to decide. (*People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 [55 Cal.Rptr.2d 760, 920 P.2d 705].) We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382 [37 Cal.Rptr.2d 596].) Thus, we presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.' (*People v. Carrasco* (2008) 137 Cal.App.4th 1050, 1058 [40 Cal.Rptr.3d 768].)" (*People v. Wilson* (2008) 44 Cal.4th 758, 806 [80 Cal.Rptr.3d 211, 187 P.3d 1041].)

■ Contrary to defendant's argument, the prosecution was not required to prove that defendant pointed the gun at Davis or expressly threatened her with the weapon. " 'Thus when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure. The defense may freely urge the jury not to draw such an inference, but a failure to actually point the gun, or to issue explicit threats of harm, does not entitle the defendant to a judicial exemption from section 12022.5[, subdivision] (a).' (*People v. Granado* (1996) 49 Cal.App.4th 317, 325 [56 Cal.Rptr.2d 636]; see *People v. Carrasco, supra*, 137 Cal.App.4th at pp. 1059–1060.)" (*People v. Wilson, supra*, 44 Cal.4th at p. 807.)

Defendant confronted Davis at 1:45 a.m., while she was alone outside of the car. Defendant had the gun by his side, deliberately within Davis's view. The display of the firearm, along with defendant's menacing tone of voice, served to intimidate Davis into giving up possession of her phone. Whether defendant's conduct amounted to use of a firearm, or merely being armed, was an issue for the jury to decide. Substantial evidence supports both results. We are bound by the jury's determination.

## DISPOSITION

The judgment of conviction is affirmed. The cause is remanded to the trial court for further proceedings on the issue of jury misconduct.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 20, 2011, S190688.