Filed 11/16/15  P. v. Lara CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLO RENATO LARA,<br><br>    Defendant and Appellant. | B259361<br><br>(Los Angeles County Super. Ct.<br> No. PA077482) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dalila Corral Lyons, Judge.  Affirmed as modified.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and Tannaz Koupainezhad, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Carlo Renata Lara of second degree robbery in violation of Penal Code section 211. Including sentencing enhancements for prior convictions and special allegations, the trial court sentenced defendant to 16 years in state prison, imposed all mandatory fines and fees, and granted presentence custody credits.

Defendant contends the trial court abused its discretion by rejecting defense requests for juror identification information and a full evidentiary hearing into possible juror misconduct. Defendant also contends the court erred in calculating sentencing credits. The Attorney General contends there was no abuse of discretion, but agrees the court erroneously calculated defendant's presentence custody credits. We affirm the judgment as modified.

**FACTUAL AND PROCEDURAL BACKGROUND**

**Jury trial and verdict**

After receiving pretrial instructions and hearing evidence relating to a robbery, a jury of 12 men and women rendered a guilty verdict on June 3, 2014. Our discussion focuses on the facts and events that are at the heart of defendant's appeal.

The jury began deliberations on June 2, 2014. On June 3, 2014, the jury sent a note to the court stating that "a jury member wants to vote a certain way based off of evidence that is not present/entered as exhibits[,] i.e.: plates, fingerprints, knife, DNA." The court instructed the jury that their verdict must be based only on the evidence presented at trial, and reminded them of the definition of "evidence" in jury instruction 222.

When the jury returned its verdict, it included two notes. After taking the jury's verdict and polling each juror individually, the court shared both notes with counsel. The first note was from Juror No. 9, who said she ran into the defendant's wife. The second

2

note stated Juror Nos. 7, 1, 2, 4, and 5 were concerned for their safety. It also said Juror No. 9 wanted to take a picture of the judge's order.

The court questioned Juror No. 9 about a conversation that took place between her and defendant's wife. The court clarified that the interaction between Juror No. 9 and defendant's wife took place after the jury had already reached its verdict. Juror No. 9 explained she ran into defendant's wife in the bathroom. Defendant's wife told her she did not have to agree with the jury and something about 22 years. Juror No. 9 told defendant's wife, "I know. I don't like this as much as you do." Juror No. 9 felt bad and was upset, but left the bathroom without saying anything else. She informed the other jurors.

Defense counsel asked Juror No. 9 what she meant when she said she did not like this, attempting to clarify whether she was referring to the conversation with defendant's wife or the verdict, and Juror No. 9 replied, "No. The whole situation is disturbing." When defense counsel tried to ask Juror No. 9 if she had second thoughts about her vote, the court stopped the questioning and reminded counsel that the juror could discuss the verdict and deliberations with any of the attorneys at a reasonable time and with her consent, but the court would not permit questions about deliberations as part of its inquiry on the record.

The court also asked Juror No. 9 whether there was an issue with anyone taking photos of any of the jury instructions or evidence. Juror No. 9 said she wanted to take a photo of the court's response to the jury's note about evidence so she could show it to her job, but the other jurors told her not to take the photograph, and she complied with the request. When defense counsel tried to ask Juror No. 9 whether she was considering such evidence or was concerned the prosecution did not present certain evidence, the court again refused to permit questions about deliberations. The court asked Juror No. 9 why she wanted to show a photo of the note to her job. She replied "to show them for the record that I have been here." When the court suggested she could just show them the letter from the court acknowledging jury service, she responded, "Fine. I don't see what

3

the big deal is." Defense counsel requested a full evidentiary hearing with Juror No. 9 and the other jurors "about that question about the note."

Juror Nos. 7, 1, 2, 4, and 5 expressed discomfort and concern over Juror No. 9 talking about taking photos with her cell phone. None of the jurors stated they saw Juror No. 9 take any photos. Juror No. 7 was concerned because he had "a gut feeling" Juror No. 9 had some connection to defendant. Juror No. 1 said Juror No. 9 approached her in the hallway and asked if it would be an invasion of privacy if she were to take a picture or if someone were to take a picture of her. Juror Nos. 2 and 4 only expressed concern about Juror No. 9's desire to take a picture of the court's order, and Juror No. 5 expressed a safety concern because he lives in the area near the courthouse.

Counsel did not ask any questions of these five jurors, but after the questioning was finished, defense counsel again requested an evidentiary hearing, this time about possible communication outside the deliberation room in the hallway about photographs and issues. The prosecutor responded that there was no evidence Juror No. 9 took any photos, and any discussion about photos did not have any impact on the jury's deliberative process. He also emphasized that Juror No. 9's contact with defendant's wife was after the jury had reached a verdict, and she disclosed the contact to the jury and the court. The court recalled Juror No. 9 to clarify whether she took any photos, or mentioned anything about taking photos. The court permitted defense counsel to ask questions as well. Juror No. 9 denied taking any photos or engaging in any conversation with any other jurors about taking any photos. She also denied speaking to defendant's wife during the course of the trial.

**Motion for new trial and request for release of information**

Defendant filed a motion for new trial, which the prosecution opposed. The motion included an attached email from a defense paralegal who interviewed Juror No. 9 about the deliberations. The defense sought a continuance to locate a juror (presumably Juror No. 9) and requested a release of personal juror information. The defense

4

submitted one additional filing, described on the cover page as a "'supplemental' declaration in support of motion for a new trial; and request for release of juror information." The attached document bore the title "Investigative Report" and appears to be a summary of a telephone interview of Juror No. 9 prepared by a defense investigator, with Juror No. 9's signature at the end. Although Juror No. 9's signature appears below the declaration, "I have read the above statement and agree that the contents of the statement are truthful and accurate," there is no indication it was signed under penalty of perjury, nor does it specify whether the document was executed within the State of California. According to statements in the document, Juror No. 9 believed she and two other jurors initially voted to find defendant not guilty. She stated jurors based their guilty vote on an incorrect understanding of the evidence, that one juror said defendant must be guilty because police had a picture of him in a photo six-pack, and another juror believed him. Juror No. 9 said that she changed her vote from not guilty to guilty after other jurors told her she could not give a not guilty vote and bullied her to change her vote. The prosecutor filed a supplemental opposition, arguing the supplemental declaration failed to present admissible evidence of misconduct.

**Hearing and denial of motion**

The trial court denied both motions on October 3, 2014. The court noted first that the defense had not presented any sworn juror affidavits establishing misconduct. The court rejected the "supplemental declaration" on several grounds. First, the document did not meet the requirements of Code of Civil Procedure 2015.5,[1] because it neither specified a place of execution nor certified it was true under penalty of perjury. Second, the report contained inadmissible hearsay. Third, the juror's statement was not admissible evidence that the court could consider because it pertained to the juror's

---

[1] All further code section references are to the Code of Civil Procedure, unless specified otherwise.

mental processes.  Last, the asserted facts did not establish misconduct in light of the court's independent observations of Juror No. 9's demeanor.  The court noted Juror No. 9 was "a strong-willed woman" who was "feisty and stated very strong opinions."  The court further elaborated, "Based on the statements the other jurors were afraid for their safety because of Juror Number 9, it appears to me that she would be difficult to bully."  The court denied the motion to release juror information because defendant had failed to show good cause.

## DISCUSSION

### A.    Motion for new trial

Defendant contends the trial court erred by denying defense requests for an evidentiary hearing into possible jury misconduct.  "In ruling on a request for a new trial based on jury misconduct, the trial court must undertake a three-step inquiry.  [Citation.]  First, it must determine whether the affidavits supporting the motion are admissible.  [Citation.]  If the evidence is admissible, the trial court must determine whether the facts establish misconduct.  [Citation.]  Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial.  [Citations.]  A trial court has broad discretion in ruling on each of these issues, and its rulings will not be disturbed absent a clear abuse of discretion.  [Citations.]"  (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 703-704.)

Evidence Code section 1150, subdivision (a), provides:  "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly.  No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."  The inadmissibility of evidence of a juror's

6

subjective reasoning "prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under [Evidence Code] section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration. [Citations.]" (*People v. Hutchinson* (1969) 71 Cal.2d 342, 350.) "'[A] verdict may not be impeached by inquiry into the juror's mental or subjective reasoning processes, and evidence of what the juror "felt" or how he understood the trial court's instructions is not competent.' [Citations.]" (*People v. Morris* (1991) 53 Cal.3d 152, 231, disapproved of on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

1.      *Admissibility of investigative report signed by Juror No. 9*

Unsworn hearsay is insufficient to establish juror misconduct, and it is not an abuse of discretion for a trial court to deny a motion for new trial or decline to conduct an evidentiary hearing when there is no admissible evidence of juror misconduct. (*People v. Dykes* (2009) 46 Cal.4th 731, 810-811; *People v. Cox* (1991) 53 Cal.3d 618, 697, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 422; *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1467-1472.) "'Under section 2015.5, a declaration has the same "force and effect" as an affidavit.' [Citation.] 'Critical here is section 2015.5, which defines a "declaration" as a writing that is signed, dated, and certified as true under penalty of perjury. In addition, section 2015.5 specifies that a declaration must *either* reveal a "place of execution" within California, *or* recite that it is made "under the laws of the State of California."' [Citation.]" (*People v. Bryant, supra*, at p. 1470.)

The court did not abuse its discretion by not holding an evidentiary hearing, because there was no admissible evidence of juror misconduct, particularly with respect to assertions that any juror found defendant guilty based on improper considerations. The only information defendant offered in support of the alleged misconduct was a purported

7

supplemental declaration that was inadmissible because it was neither a sworn affidavit nor a declaration meeting the requirements of section 2015.5. (*People v. Bryant, supra*, 191 Cal.App.4th at p. 1470.) It also contained inadmissible hearsay, setting forth statements purportedly made by the juror who signed the document. (See *People v. Dykes*, *supra*, 46 Cal.4th at p. 810 ["a trial court does not abuse its discretion in declining to conduct an evidentiary hearing on the issue of juror misconduct when the evidence proffered in support constitutes hearsay"].)

Defendant does not dispute that the "supplemental declaration" submitted in support of the motion for new trial was not an affidavit meeting the requirements set forth in section 2015.5. Relying upon *People v. Hedgecock* (1990) 51 Cal.3d 395, 415-521 (*Hedgecock*), defendant instead argues the court erred in not conducting an evidentiary hearing where Juror No. 9 was present in court under subpoena, and defense counsel had filed a request for release of juror information. Defendant also argues that the court's refusal to hold an evidentiary hearing must have been based on the erroneous belief that it lacked discretion to hold such a hearing in the absence of a sworn affidavit establishing juror misconduct.

In reaching the conclusion that it was within a court's discretion to hold an evidentiary hearing to resolve material issues of fact regarding alleged juror misconduct, however, the Supreme Court stressed "that the defendant is not entitled to such a hearing as a matter of right. Rather, such a hearing should be held only when the trial court, in its discretion, concludes that an evidentiary hearing is necessary to resolve material, disputed issues of fact." (*People v. Hedgecock, supra*, 51 Cal.3d at p. 415.) As the Supreme Court later explained in *People v. Cox, supra,* 53 Cal.3d at pages 698-701, the court has no duty to conduct an evidentiary hearing based on an unsworn affidavit, and there are many sound reasons why a court might exercise its discretion against holding such a hearing. Here, the trial court stated that even if Juror No. 9's substantive allegations were before the court as admissible evidence, it still found no jury misconduct, in part because the substantive allegations went more to the deliberative process than to any overt acts that might constitute misconduct. (*In re Stankewitz* (1985)

8

40 Cal.3d 391, 398.) The facts set forth in Juror No. 9's statement do not amount to the kind of overt act that demonstrates misconduct. To conduct an evidentiary hearing in this scenario would be tantamount to a "fishing expedition," an endeavor against which the *Hedgecock* court explicitly cautioned. "The hearing should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*Hedgecock*, *supra*, 51 Cal.3d at p. 419; see also *People v. Hayes* (1999) 21 Cal.4th 1211, 1255.)

It was not error for the trial court to conclude that an evidentiary hearing was not necessary based on defendant's motion for new trial.

2.      *Court inquiries into potential misconduct*

To the extent defendant contends the trial court erred when it did not conduct a formal evidentiary hearing after an initial inquiry into possible misconduct based on the two notes from the jurors, we again find no error. When a court receives notice of possible juror misconduct, it has a duty to conduct a reasonable inquiry to determine if the juror should be discharged and whether the impartiality of the other jurors has been affected. (*People v. Fuiava* (2012) 53 Cal.4th 622, 702.) However, the nature and extent of the inquiry is within the court's discretion, and "'"'The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial.'"' [Citation.]' [Citation.]" (*Ibid.*)

"'We have held that when a court is put "on notice that improper or external influences were being brought to bear on a juror . . . 'it is the court's duty to make whatever inquiry is reasonably necessary to determine if the juror should be discharged and whether the impartiality of the other jurors has been affected.'"' [Citation.] Such an inquiry is central to maintaining the integrity of the jury system, and therefore is central

9

to the criminal defendant's right to a fair trial. [Citation.]' [Citation.] On the other hand, 'not every incident involving a juror's conduct requires or warrants further investigation. "The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court. [Citation.] . . . [¶] As our cases make clear, a hearing is required only where the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his duties and would justify his removal from the case. [Citation.]" [Citation.]' [Citations.] ""The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial.'" [Citation.]' [Citation.]" (*People v. Fuiava, supra,* 53 Cal.4th at p. 702.)

Here, the court questioned Juror No. 9 on three separate topics, and in each instance it reasonably concluded that there was no misconduct requiring further investigation or action. During the trial, Juror No. 7 expressed concern about Juror No. 9 doing her makeup during testimony and making statements about coming to court late. Juror No. 9 denied missing any testimony. After the verdict, the court conducted an inquiry into Juror No. 9's report about having interacted with defendant's wife. The most important factor is that the conversation took place *after* the jury had reached a verdict. Defense counsel attempted to delve further into why the juror seemed upset, but to the extent his questions would have focused on Juror No. 9's thoughts and feelings about the verdict, such questioning would not give rise to evidence admissible under Evidence Code section 1150. (*In re Stankewitz, supra*, 40 Cal.3d at p. 398 [jurors may not testify about their subjective reasoning processes].)

## B.     Request for release of juror identification information

We also reject defendant's contention that the trial court erred by denying the request for juror identifying information. We review the court's decision under the abuse of discretion standard. (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 991.) Section

237, subdivision (a)(2) provides that after the court records the jury's verdict in a criminal case, "the court's record of personal juror identifying information of trial jurors, . . . consisting of names, addresses, and telephone numbers, shall be sealed until further order of the court." Before the court discharges a jury, it must inform the jurors of their absolute right to discuss or not discuss the deliberation or verdict with anyone, and both the prosecution and the defense "may discuss the jury deliberation or verdict with a member of the jury, provided that the juror consents to the discussion and that the discussion takes place at a reasonable time and place." (§ 206, subds. (a) & (b).) If defense counsel needs access to juror identifying information in order to communicate with jurors, he or she may petition the court for access to the sealed information. (§§ 206, subd. (g) & 237, subd. (b).)

Defendant's request for release of juror information relied upon the same information that was already before the court when it denied the motion for new trial. In addition, defense counsel had represented to the court at an earlier hearing that he sought a continuance on the motion for new trial because his investigator was very close to locating Juror No. 9, and "in an abundance of caution because the witness recently spoke with my investigator." We agree with the trial court's reasoning that a hearing on the request for jury information was not necessary because the defense had not shown good cause, as there was no reasonable evidence of jury misconduct that would warrant disclosing juror identifying information.

## C. Custody credits

We agree with defendant's contention that the trial court incorrectly calculated his presentence custody credits. An incorrect calculation of custody credits results in an unauthorized sentence, which may be corrected at any time. (*People v. Duran* (1998) 67 Cal.App.4th 267, 270.)

At the resentencing on October 8, 2014, the trial court gave defendant 398 days of actual custody and 61 days of good time/work time credit, for a total of 459 days of

presence custody credits.  Because defendant had been in custody since his arrest on August 7, 2013, he had actually served 428 days in custody, rather than 398.  Based on the corrected actual custody time, he was entitled to 64 days of good time/work time credit (15 percent of 428) for total presence custody credits of 492 days.  (Pen. Code, § 2933.1; *People v. Caceres* (1997) 52 Cal.App.4th 106, 110-111.)  Accordingly, defendant's custody credits should be corrected to be 428 actual days, 64 good time/work time credit, for a total of 492 days of presence custody credits.

## DISPOSITION

The trial court is directed modify the judgment to reflect that defendant is entitled to 492 days of presence credits, consisting of 428 actual days and 64 good time/work time credits.  The abstract of judgment is ordered modified to reflect the correct custody credits.  As modified, the judgment is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.

BAKER, J.

12