Filed 4/26/21 P. v. Smith CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B303508 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA472892) |
| v. | |
| DENZEL SMITH, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge. Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant Denzel Smith.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant Kirby Dearlle Allen.

Spolin Law, Aaron Spolin and Jeremy Cutcher for Defendant and Appellant Deshon Markeist Wright.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Denzel Smith, Kirby Dearlle Allen, and Deshon Markeist Wright (collectively Defendants) took over $400 and a gold chain necklace from a man at gunpoint. A jury convicted them of second degree robbery. They jointly appeal the conviction, arguing that the trial court erred in denying a motion for new trial based on juror misconduct. Because Defendants failed to present credible evidence of any misconduct, we affirm.

## FACTUAL BACKGROUND

On January 16, 2018, Shaquille Brown cashed his paycheck at a liquor store in Los Angeles. The clerk gave him approximately $415.

Shortly after leaving the store, Brown called 911. He told the dispatcher that "somebody just robbed me," "they just robbed me at gunpoint." He said that three men in a car "ran up on" him, and "took [his] chain" and "cash, like 400 and something dollars in cash." Brown described the men as Black, with one wearing a red hoodie and one wearing "red over red." He reported that the suspects were driving a 2017 black Chevrolet Impala with paper license plates, and gave an approximation of their route.

The dispatcher gave this information to a Los Angeles Police Department helicopter. The flight officer quickly located the Impala and coordinated with officers on the ground to apprehend Defendants.

An officer arrested Smith shortly after he was dropped off in a nearby alley. At the time of his arrest, he had $105 on his person. Soon afterwards, the Impala turned into a parking lot.

2

The flight officer observed Allen and Wright exiting the car and entering a laundromat. Wright was wearing red pants and a red shirt. Officers arrested the pair as they left the laundromat. Allen had $162 on his person, and Wright had $140.

The keys to the Impala were found in the laundromat, where they had been discarded behind a row of washing machines. The Impala's paper plates were covering the car's true license plates. Officers found another $115,[1] a broken gold chain necklace, and a red sweatshirt in the car. Each of Defendants' fingerprints were present on the doors of the Impala.

## PROCEDURAL BACKGROUND

### A. The Trial

Defendants were each charged with one count of second degree robbery in violation of section 211 of the Penal Code.[2]

On July 18, 2019, the last day of Defendants' trial,[3] Wright told his counsel that he had overheard a group of jurors, including Juror No. 3, talking during the lunch break. Wright's counsel informed Judge Ronald Coen[4] that Wright told him that during the recess Wright observed Juror No. 3 and several other jurors "talking about something." Counsel admitted that "[w]e

---

[1] The total amount of money discovered in Defendants' possession at the time of their arrests was $522.

[2] Subsequent undesignated citations are to the Penal Code.

[3] The jury deadlocked in Defendants' first trial, resulting in a mistrial.

[4] Judge Coen was sitting in that day for the trial judge, Judge Curtis B. Rappe. For purposes of this opinion, we refer to both judges as "the trial court."

3

don't know what it was." He asked for the opportunity to question Juror No. 3 about the conversation. Allen's and Smith's attorneys joined the request.

Judge Coen denied the request for two reasons. First, he cited *People v. Bell* (2019) 7 Cal.5th 70, for the proposition that mere speculation of juror misconduct is not sufficient to support further investigation with members of the jury. Second, he cited *People v. Peoples* (2016) 62 Cal.4th 718, as holding that a hearing on juror misconduct should be held only when necessary to resolve a disputed issue of material fact, not as a fishing expedition to find possible juror misconduct. Judge Coen told counsel that his request sounded like "a fishing expedition" rather than a legitimate basis for juror inquiry. Neither Wright nor the other attorneys provided additional details to support the request for further inquiry.

Immediately thereafter, the jury returned and delivered guilty verdicts for all Defendants on count 1.

## B. The Motion for a New Trial

On August 16, 2019, Allen's counsel filed a motion for new trial alleging juror misconduct. The motion included a declaration by Allen's counsel that, one month after the trial, on August 12, 2019, counsel learned additional information regarding the activity Wright had observed on July 18. Counsel claimed that Wright's girlfriend, Ramonda Shakir, had overheard a group of jurors saying that "Defendants were [B]lack and how [the jurors] needed to get . . . [Defendants] off the streets before they did this to someone else," and "the need to convince the other jurors to find Defendants guilty." Smith and Wright joined the motion.

4

On December 11, 2019, the trial court conducted an evidentiary hearing on the motion for new trial. Defendants produced a declaration by Shakir, confirming the details recited in the declaration of Allen's counsel. Shakir also appeared as the sole witness for the defense. Her declaration was admitted as her direct testimony.

On cross-examination, Shakir testified that during the lunch recess on July 18, she was sitting on a bench across the hall from the group of jurors. She repeatedly confirmed that Wright was in the bathroom at that time, but also claimed that he overheard the conversation. She recalled hearing Juror No. 3[5] tell three other jurors that Defendants "were Black and [the jury] had to basically get them off of the street before they did this to anyone else, and that they are criminals, and that they were guilty, and that [the group] needed to convince the rest of the jurors that [Defendants] were guilty," or words to that effect.

Shakir testified that she told Wright's attorney about the conversation before the end of the recess. She also told Allen's counsel that same day.

The trial court held that Shakir's testimony was "not credible." The court found that Shakir's testimony that she told both counsel for Allen and Wright about the content of the conversation on the final day of trial was contradicted by the statement by Wright's counsel in court the same day, advising that he learned the jurors were "talking about something. We

---

[5] Shakir's testimony describes Juror No. 3 as "an alternate." The juror in question had been an alternate but was seated as Juror No. 3 when the original juror was dismissed for health reasons.

don't know what it was." Furthermore, the court expressed doubt that Shakir had provided the details of the juror's statement to counsel because if she had, it was likely that counsel would have immediately brought it to the attention of the trial judge. Accordingly, the trial court concluded that her account, which he characterized as "an after-the-fact attempt to make up a story to extricate her boyfriend and others from the conviction," did not establish juror misconduct.

Defendants timely appealed. They subsequently joined their appeals pursuant to rule 8.200(a)(5) of the California Rules of Court.

## DISCUSSION

A criminal defendant has the fundamental right to trial by impartial jurors "that consider[ ] only the evidence admitted in court." (*People v. Stanley* (1995) 10 Cal.4th 764, 836; see also U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 16.) A new trial may be granted "[w]hen the jury has . . . been guilty of any misconduct by which a fair and due consideration of the case has been prevented." (§ 1181, subd. (3).) Misconduct occurs when a juror renders a verdict on the basis of racial animus. (*Pena-Rodriguez v. Colorado* (2017) ___ U.S. ___ [37 S.Ct. 855, 869] [holding that an evidentiary hearing regarding potential juror misconduct is proper "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant"].) Misconduct also occurs when a group of jurors discusses the case outside the presence of all the jury members and outside the jury deliberation room. (*People v. Hem* (2019) 31 Cal.App.5th 218, 229 [where a group of jurors discussed the case in the hallway outside the courtroom, their discussion constituted juror misconduct].)

6

Defendants claim that the group of four jurors committed misconduct by discussing the case during the recess, and, in the case of Juror No. 3, by expressing racial bias to sway other jury members. Defendants identify two errors made by the trial court regarding this alleged misconduct. First, they argue the trial court should have investigated Wright's allegations of juror misconduct. Second, they argue the court erred by denying the subsequent motion for new trial.

## A. Request to Investigate Alleged Misconduct During Trial

During a criminal trial, " '[t]he law is clear . . . that the court must investigate reports of juror misconduct to determine whether cause exists to replace an offending juror with a substitute.' [Citation.]" (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 483.) However, not every complaint regarding a juror's conduct warrants investigation. "[A] hearing is required only where the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his duties and would justify his removal from the case." (*People v. Ray* (1996) 13 Cal.4th 313, 343.) Mere speculation about possible juror misconduct does not justify further inquiry. (*People v. Bell*, *supra*, 7 Cal.5th at p. 120.)

We review the trial court's refusal to conduct a juror investigation for abuse of discretion. (*People v. Cleveland* (2001) 25 Cal.4th 466, 478 [" 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court' "].)

We conclude the trial court acted well within its discretion when denying Defendants' request to investigate potential juror

misconduct.  Defendants premised their request solely on Wright's observation of a group of jurors conversing during a recess.  The three defense counsel were not able to provide any information about the subject of the jurors' conversation.  Indeed, Wright's counsel frankly admitted, "[w]e don't know what it was." Defendants' only basis for questioning the jury was Wright's suspicion that the jurors *might* have been talking about the case. Such speculation is an insufficient basis for investigation. (*People v. Bell*, *supra*, 7 Cal.5th at p. 120; see also *People v. Peoples*, *supra*, 62 Cal.4th at p. 777 [a hearing on juror misconduct " ' "should not be used as a 'fishing expedition' to search for possible misconduct, but should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred" ' "].)  Under these circumstances, Defendants' assertion that the trial court "failed to conduct an adequate inquiry into the claim of jury misconduct" is without merit.

## B.    Denial of Motion for New Trial

If a defendant seeks a new trial based on jury misconduct, he must provide admissible, credible evidence of the alleged misconduct.  (*People v. Perez* (1992) 4 Cal.App.4th 893, 906 ["The court must first determine whether the [evidence] supporting the motion [is] admissible.  [Citation.]  If the evidence is admissible, the court must then consider whether the facts establish misconduct"].)  The "trial court has broad discretion" to determine whether a criminal defendant has produced admissible evidence establishing misconduct, and "its rulings will not be disturbed absent a clear abuse of discretion."  (*Ibid.*)

We conclude the trial court did not abuse its discretion in denying Defendants' motion for new trial.  At the hearing,

8

Defendants presented one witness, Shakir, who provided additional details about the incident that she and Wright observed on July 18. The trial court rejected Shakir's testimony after determining that she was "not credible."

Indeed, Shakir's testimony contradicted several points raised in Defendants' argument and the record. Most critically, Shakir testified that she told both Wright's counsel and Allen's counsel what she had heard on the day of the incident. Yet when Wright's counsel brought the incident to the court's attention, he stated that Wright, not Shakir, had told him about the incident, but counsel did not know what the jurors had been discussing. When the trial court denied Defendants' request to question the jury, neither counsel advised the court that Shakir, who was present in court, had additional information about the incident. Allen's counsel later filed a declaration stating that she first learned about Shakir's information on August 12, contradicting Shakir's claim that she first told Allen's counsel on the final day of trial one month earlier.

These inconsistencies provide ample justification for the trial court's credibility finding. Since Defendants offered no other evidence, the trial court reasonably concluded they had not adduced admissible evidence establishing juror misconduct, and properly denied their motion for new trial.

Defendants challenge the trial court's conclusion on four grounds. First, they insist that Shakir's testimony was credible evidence of juror misconduct. This ignores the trial court's express finding that Shakir was not credible. On appeal, we must " 'accept the trial court's credibility determinations . . . if supported by substantial evidence.' [Citation.]" (*People v. Verdugo* (2010) 50 Cal.4th 263, 308.) Defendants contend the

trial court's credibility finding is not supported by substantial evidence, arguing that the inconsistencies in Shakir's testimony could have been resolved in other ways and that other elements of Shakir's testimony are supported by the record. However, the fact the trial court could have made a contrary finding does not fatally undermine its actual finding. As we outlined above, the court's finding as to Shakir's credibility in this case is amply supported by the record. (See also *People v. Barnwell* (2007) 41 Cal.4th 1038, 1053 ["we afford deference to the trial court's factual determinations, based, as they are, on firsthand observations unavailable to us on appeal"].)

Second, Defendants argue that Shakir's credibility is irrelevant because, even if her testimony was unreliable, the alleged misconduct still could have occurred. This argument disregards Defendants' burden to produce evidence of juror misconduct, rather than assertions based on speculation. Defendants cite a number of cases in an attempt to support their argument. These cases, however, do not concern speculative assertions of misconduct, and thus they are inapposite. (*People v. Lavender* (2014) 60 Cal.4th 679, 691-693 [remanding where the prosecution conceded there were unresolved material disputes of fact regarding allegations of juror misconduct]; *People v. Hem*, *supra*, 31 Cal.App.5th at p. 225 [remanding for further proceedings where there was undisputed evidence of juror misconduct]; *People v. Bryant* (2011) 191 Cal.App.4th 1457, 1470-1471 [remanding where the trial court erred in considering unsworn juror declarations as a basis for an allegation of juror misconduct]; *People v. Perez*, *supra*, 4 Cal.App.4th at p. 908 [remanding for further proceedings where the facts assumed to be

10

true by the trial court supported an allegation of juror misconduct].)

Third, Defendants argue the prosecution failed to prove that the alleged misconduct was not prejudicial, as required by constitutional standards. However, the question of prejudice does not arise until the defense produces admissible, credible evidence of juror misconduct. (*People v. Perez*, *supra*, 4 Cal.App.4th at p. 906 [only when the defendant demonstrates juror misconduct does the court turn to the question of whether that misconduct was prejudicial].) In this case, Defendants failed to satisfy this threshold requirement.

Lastly, Defendants argue the trial court should have at least attempted to corroborate the allegations of racial bias raised by the defense. Defendants cite our Supreme Court's recent statement "condemn[ing] racism in all its forms" and calling on all state courts to "confront the injustices that have led millions to call for a justice system that works fairly for everyone." We agree wholeheartedly with this statement, and with established constitutional precedents denouncing the evil effects of racial bias in the law. (*Pena-Rodriguez v. Colorado*, *supra*, 137 S.Ct. at p. 868] ["[D]iscrimination on the basis of race, 'odious in all aspects, is especially pernicious in the administration of justice.' [Citation.] . . . Permitting racial prejudice in the jury system damages 'both the fact and the perception' of the jury's role as 'a vital check against the wrongful exercise of power by the State' "].) However, our obligation to remedy racial injustice does not require us to infer that racial bias infected a jury's verdict based solely on Defendants' conjecture. Without a reason to question the trial court's credibility finding as to Defendants' sole

11

witness, we have no grounds to order further investigation of the jury in this case.

Defendants failed to meet their burden to present credible evidence of juror misconduct.  For that reason, we must affirm.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED


FEDERMAN, J.*


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

---

*Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.